James E. HENDLEY, Plaintiff-Appellant,

v.

**CENTRAL OF GEORGIA RAILROAD CO., Defendant-Appellee.**

No. 78–1058.

United States Court of Appeals,
Fifth Circuit.

Jan. 15, 1980.

Rehearing and Rehearing En Banc
Denied March 12, 1980.

Edward W. Szczepanski, Billy E. Moore, Columbus, Ga., John Wright Jones, Savannah, Ga., J. Sherrod Taylor, Columbus, Ga., for plaintiff-appellant.

John B. Miller, Savannah, Ga., William P. Stallsmith, Jr., Washington, D. C., for defendant-appellee.

Before TUTTLE, VANCE and KRAVITCH, Circuit Judges.

TUTTLE, Circuit Judge:

The appellant, a railroad employee, was charged with disloyalty to the railroad because of his assistance in a fellow employee's FELA action against the railroad. He filed an action to enjoin the railroad from conducting a disciplinary hearing, and now appeals from the district court's denial of the injunction. We reverse and remand.

James E. Hendley is employed by Central of Georgia Railroad as a switch engine foreman, and serves as local chairman of the United Transportation Union. In 1977, Daniel Razook, also a Central of Georgia employee, filed suit under the Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, against Central of Georgia and Union Camp Corporation, a customer of the railroad. Razook had been injured while working on a Central of Georgia railroad track which runs through the property of Union Camp Corporation. Although the property on which the tracks are located is owned by Union Camp, Central of Georgia and the Seaboard Coast Line Railroad have operating rights to the tracks.

Hendley had not been present when Razook was injured; however, he had been employed by the railroad for twenty-five years and was very familiar with the Union Camp yard. Razook, who was confused about the exact physical layout of the tracks, called Hendley at home and asked Hendley to meet him at the Union Camp Company to look at the tracks. Hendley, who was not on duty that day, arrived first, and was met on the property by Razook and Billy Moore, Razook's attorney. Razook had not mentioned to Hendley that he would be accompanied by his attorney. The three men walked through a gate to the area where the tracks were located. While Razook and Hendley were discussing the tracks, Moore took some pictures of the yard. Hendley did not assist Moore in taking the pictures. An engine was stopped in the woodyard, and Hendley and Moore apparently stepped up on it to speak to the railroad workers. None of the parties can recall whether the engine belonged to Seaboard or Central of Georgia.

On November 11, 1977, Hendley was deposed in connection with the Razook case. He answered questions concerning the physical characteristics of the Union Camp yard and discussed his visit to Union Camp to view the tracks with Razook. Certain responses in the deposition indicated that Hendley and Moore had climbed up onto a switch engine.[1]

---

1. The deposition also included the following exchange between John Miller, the attorney for Central of Georgia, and Hendley:

> Q. You said you came in on a road there. Did you come into Union Camp's premises on the switch engine, or did you—
> A. No. We drove in on the premises.
> Q. How did you get through the gate?
> A. When you say "premises," I don't know if you mean the yard or the particular track. We drove in off Bay Street to the yard and walked down the yard where there was a switch engine on Track 16.
> Q. That's the same way you come in when you go to work out there?

> A. Yeah.
> Q. Do you have a sticker on your car, with identification?
> A. No, sir.
> Q. How do you get through the gate?
> A. Well, there's no gate actually. When I say "gate," I thought ya'll were referring to the gate that comes into these two particular tracks.
>
>  There's two roads that lead—no road for an automobile. It's just a gate for the track.
> Q. Well, when you drove the switch engine in there, was that part of the job you

A few days after Hendley's deposition was taken, W. D. Cogdell, Hendley's superintendent, saw the deposition while helping to prepare the defense in Razook's case. After reviewing the deposition, he concluded that Hendley was guilty of disloyalty to the railroad. The trial of Razook's case against the railroad ended on November 30, and on the next day, December 1, Hendley received a letter from Cogdell informing him of a formal investigation to be held on December 2 at 11:00 A.M. The letter charged Hendley with "disloyalty to the Central of Georgia Railroad Company in that you accompanied and assisted Mr. Billy Moore onto the property of the Union Camp Corporation on an unknown date for the purpose of making photographs of Union Camp Corporation's property for use in a law suit against the Central of Georgia Railroad Company and Union Camp which is in violation of rule R[2] of the book of operating rules of Southern Railway System." Hendley was suspended from service as of December 1, pending the outcome of the investigation. At Hendley's request, the investigation was postponed until December 8 at 1:00 P.M. On December 8, Hendley filed suit in the district court for the Southern District of Georgia, requesting that the district court enjoin the defendant from conducting the disciplinary hearing and from interfering with his employment. Hendley alleged that the railroad's actions violated 45 U.S.C. § 60, which provides that it is a crime to discipline an employee for voluntarily furnishing information in connection with an FELA case.

The district court denied Hendley's request for an injunction, holding that the disciplinary procedure was a "minor dispute" within the exclusive jurisdiction of the National Railroad Adjustment Board. *Hendley v. Central of Georgia Railroad Co.,* 442 F.Supp. 482 (S.D.Ga.1977) (citing the Railway Labor Act, 45 U.S.C. § 153 First (i)). Although the court agreed that violations of § 60 can be enjoined in connection with an on-going FELA case, it held that the section does not confer jurisdiction to override the mandatory grievance procedures where the case has been concluded and there is no possibility that evidence will be suppressed through coercion by the railroad. 442 F.Supp. at 486. Hendley filed a notice of appeal and a motion for an injunction pending appeal, stating that he was being irreparably harmed by the defendant's actions, since he was now unemployed. The court denied his motion for an injunction pending appeal.

The disciplinary hearing was conducted on February 15, 1978, and Hendley was dismissed from service on February 25, 1978. Hendley then progressed his grievance through the procedures of the National Railroad Adjustment Board. On April 6, 1979, the Board reviewed the decision and found that Hendley's "disloyalty" warranted disciplinary action,[3] but that dismissal

---

were doing, or did you take it in there just to take pictures?

A. No, there was a switch engine, if I'm not mistaken, that was going that way, because I don't know these people, really. I can't really remember.

From reading this language, Hendley's superintendent concluded that Hendley and Moore had stopped an engine and ridden into the yard. At the disciplinary hearing, it developed that they did not actually ride into the woodyard on a locomotive engine. They merely stepped onto an engine briefly to speak to other employees.

2. Rule R of the Southern Railway System's operating rules provides:

Employees must not divulge to any person other than the shipper, consignee or a duly authorized public officer, any information

concerning shipments of freight, which information might be used to the disadvantage of the patrons of the railroad.

Information detrimental to the Company's interests must not be divulged except to proper officers or to others authorized to obtain such information.

3. In making this decision, the Board relied heavily on the fact that Hendley had entered the property of Union Camp without authorization. In its award, the Board stated, "This conduct can be characterized as being disloyal in the sense that the Claimant entered properties controlled by the Carrier without authorization and deprived the Carrier of the opportunity to be present at the accident scene when photographs were taken by the plaintiff." We cannot agree that this finding is supported by the evidence. Union Camp Corporation's prop-

from service was "an extremely harsh penalty." Accordingly, the Board ordered that Hendley be reinstated with full seniority, but without back pay.

It is necessary first for us to define precisely the question that is before us. We are not faced with the broader issue of whether 45 U.S.C. § 60, a criminal statute, may be enforced through a district court's issuance of an injunction in a civil action. The parties agree, and the district court held, that an injunction may issue to prevent violations of § 60 in an ongoing FELA case. The question we must decide is whether a federal court also has jurisdiction, when an FELA case has been concluded, to enjoin a disciplinary hearing used by a railroad for retaliatory purposes in violation of 45 U.S.C. § 60.

■ The Railway Labor Act, 45 U.S.C. §§ 151–163, requires that railroads and railroad employees attempt to settle all minor disputes through grievance procedures. If those procedures fail, either party may appeal to the National Railroad Adjustment Board for compulsory arbitration. *Id.* § 153 First (i). An award of the adjustment board is final and binding on both parties, § 153 First (m), and the scope of judicial review of these awards is narrow. *See Central of Georgia Railway Co. v. United Transportation Union,* 353 F.Supp. 293, 302 (S.D.Ga.1973) (range of judicial review is "among the narrowest known to the law;" awards are final in the absence of fraud or jurisdictional defects). Minor disputes are those disputes which concern the application or interpretation of existing collective bargaining contracts, while "major disputes" concern changes in rates of pay or working conditions where the method of change is not provided in the existing labor contract. *REA Express, Inc. v. Brotherhood of Railway, Airline & Steamship Clerks,* 459 F.2d 226, 230 (5th Cir.), cert. denied, 409 U.S. 892, 93 S.Ct. 115, 34 L.Ed.2d 149 (1972). It is clear that a disciplinary hearing which is conducted in accordance with the procedures set out in an applicable collective bargaining agreement would usually constitute a minor dispute. *See Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.,* 305 F.2d 605, 607 (5th Cir. 1962); *Clark v. Seaboard Coast Line Railroad Co.,* 332 F.Supp. 380, 381 (N.D.Ga.1970). Thus, the National Railroad Adjustment Board has exclusive jurisdiction over this dispute, unless 45 U.S.C. § 60 is found to override the statutory arbitration processes. We conclude that it does.

■ The authors of the Federal Employers' Liability Act, recognizing the danger that railroad agents would coerce or intimidate employees to prevent them from testifying, included 45 U.S.C. § 60 in the Act:

> Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges *or otherwise disciplines or attempts to discipline* any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine of not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense; *Provided,* That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.

[Emphasis added.] This section prohibits a railroad from disciplining or attempting to

---

erty is not controlled by the Central of Georgia railroad; the railroad merely has operating rights to the tracks that run through the yard. Furthermore, even if the railroad did control the property, Hendley was not responsible for the attorney's entrance onto the property or his photographing of the area.

discipline an employee for furnishing information to an FELA plaintiff. Thus, any disciplinary investigation held solely for the purpose of punishing an employee for such conduct is violative of this statute. Hendley filed suit in federal district court, claiming that the scheduled disciplinary hearing was illegal for this reason. Nevertheless, the district court held that he had an adequate administrative remedy—the disciplinary hearing itself. The court listed a number of questions to be determined in the hearing and the subsequent arbitration, including whether "the disciplinary investigation [was] punitive or coercive in motive or effect." *Hendley v. Central of Georgia Railway Co.,* 442 F.Supp. at 486. The illogical result of such an interpretation is obvious. The employee may be forced to undergo an illegal investigation, and to present in that hearing his claim that the investigation is illegal.

▮▮ The question of whether a particular disciplinary hearing violates § 60 involves interpretation of a federal statute, and is therefore a matter of federal jurisdiction. An analogous situation was presented in *Brotherhood of Railroad Trainmen v. Smith,* 251 F.2d 282 (6th Cir. 1958); a case arising under the Railway Labor Act. A railroad employee, the plaintiff in that case, was discharged for noncompliance with a Union Shop Agreement. He sought to enjoin enforcement of the discharge order on the ground that the agreement between the union and the railroad, as interpreted and applied, violated § 2 of the Railway Labor Act, 45 U.S.C. § 152. The union argued that the case was within the exclusive jurisdiction of the National Railroad Adjustment Board. Rejecting this argument, the court stated:

> The issue is whether the BRT Union Shop Agreement is valid if interpreted and carried out by the Railroad and BRT so as to deprive Smith and others similarly situated of their employment as conductors. Decision of this issue depends upon the meaning of the statute and over such a question the federal courts have jurisdiction.

251 F.2d at 285. *See also, Brotherhood of Railroad Trainmen v. Howard,* 343 U.S. 768, 774–75, 72 S.Ct. 1022, 96 L.Ed. 1283 (1951). Similarly, in the instant case, the issue before the court does not involve interpretation of a collective bargaining agreement, an appropriate matter for resolution by arbitration. Rather, the question is whether a disciplinary hearing brought in accordance with the procedures established in the collective bargaining agreement violates a federal statute. This is a matter properly within the jurisdiction of the federal courts and is not a question to be determined by the administrative board.

This reasoning is also illustrated by a series of cases in which a railroad's conduct was found to be violative of the Railway Labor Act's prohibition against coercion to influence an employee's choice of a union representative, 45 U.S.C. § 152 Third. In *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.,* 305 F.2d 605 (5th Cir. 1962), a railroad employee who was also a union representative was notified that he would be investigated in accordance with the collective bargaining agreement. He was charged with disloyalty because of his efforts to prevent other employees from settling personal injury suits. He filed suit in federal district court, requesting an injunction on two grounds. First, he claimed that he was not an "employee" subject to Rule 72 of the railroad's operating rules, under which the investigation was brought. The court held that this question involved interpretation of the collective bargaining agreement, and thus was within the exclusive jurisdiction of the railroad adjustment board. Second, the employee claimed that the investigation was the result of a railroad plan to discredit the union and the plaintiff as the union representative. The plaintiff claimed therefore that the disciplinary hearing violated 45 U.S.C. § 152 Third, which prohibits coercion in employees' choice of a representative. The court held that the federal district court had jurisdiction to hear this claim, since the disciplinary hearing, if brought for the purpose of interfering with union representation, was a violation of the Railway Labor Act. The rail-

road objected that determination of the court's jurisdiction to enjoin the hearing would necessarily require a decision on the merits of the grievance against the plaintiff. The court responded:

> [T]he Railroad may not use the disciplinary proceedings as a guise for thwarting, or frustrating, or undermining the effectiveness of the Brotherhood, or Byington as its agent, in their statutory responsibilities as bargaining representatives. And in passing on the motivation for the disciplinary hearing, the Court may inescapably find itself in the position of necessarily passing on Byington's legal status as an employee, to his benefit or detriment, and the extent to which he therefore owes a duty of fidelity.

305 F.2d at 609. The court held that the plaintiff's claim, if proven, would entitle him to injunctive relief by the federal district court. *Id.*

Section 60, like § 152 Third, is a specific prohibition of certain conduct by a railroad.[4] A plaintiff may not be denied access to the federal courts when his employer uses its grievance procedures and disciplinary powers in direct violation of this statute. If an employee can show that the object of a railroad's investigation is to discipline the employee for furnishing information in an FELA case, then injunctive relief by a federal district court is "appropriate if not compelled." *Brotherhood of Railroad Trainmen v. Central of Georgia Railway Co.,* 305 F.2d at 609; *see Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914, 918 (7th Cir. 1974).

Finally, a district court's ability to enjoin a hearing or conduct which violates § 60 is essential to effectuate the purpose of the section. In *Kozar v. Chesapeake &*

*Ohio Railway Co.,* 320 F.Supp. 335 (W.D. Mich.1970), *affirmed in part and vacated in part,* 449 F.2d 1238 (6th Cir. 1971), a district court recognized the intimidating effect of any exercise of a railroad's power against an FELA witness:

> [R]ailroad employees are subject to considerable pressure if called to give testimony against their employer. This pressure need not be the result of direct threats or arm-twisting; it is not necessarily the object of deliberate railroad policy. But whether by design or accident, the fact remains that these working men, through numerous contacts with supervisors and claim agents during the discovery process, often believe that a wrong step—defined by railroad rules (real or apparent) and interpreted by railroad officials—may result in sanctions, and that the wrong testimony—potentially costing the railroad large amounts of money—might arouse the displeasure of those in control of their livelihood. The tremendous power of a corporation like the Chesapeake and Ohio Railroad, coupled with its aggressive efforts to defeat the claims of those injured by its activities—even when the victims are their most valuable employees—can overawe and even cower those individuals upon whom an opposing party must rely to substantiate his claim.

320 F.Supp. at 369–70. If a railroad is allowed to discipline an employee for furnishing information to an FELA plaintiff, and the employee is required to submit to the hearing and to process his claim through arbitration before finally reaching the federal courts, the coercive effect is overwhelming. Employees who consider testifying in an FELA case will understandably hesitate if they know that they may be

---

**4.** In a later case, *Brotherhood of Railroad Trainmen v. Southern Railway Co.,* 393 F.2d 303 (5th Cir. 1968), the plaintiff railroad relied on *Brotherhood of Railroad Trainmen v. Central of Georgia* and requested that the district court enjoin union activity alleged to have violated the general policy provisions of the Railway Labor Act. The court rejected this argument, stating that § 152 Third, the basis for injunction in the earlier case, was more than a general policy statement, since it "specifically prohibits interference by the carrier with the designation of representatives by the union." *Id.* at 307. This decision illustrates the similarities between § 152 Third and § 60, and the necessity of federal court jurisdiction to enjoin their violation. Both statutes involve much more than mere policy statements—they declare certain conduct unlawful and provide criminal penalties for violation.

forced, as Hendley was, to undergo a formal investigation and possibly suspension for a lengthy period of time. The fact that the employee may ultimately prevail is of little assurance to one who faces possible unemployment for a year or more. Thus, the disciplinary procedure not only violates the mandate that an employer refrain from disciplining an employee for furnishing information, it also becomes a device the "effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest." 45 U.S.C. § 60.

For these reasons, we hold that a district court has jurisdiction, even after the conclusion of an FELA case, to enjoin any proceeding which is violative of § 60. We do not hold that an employee may never be disciplined for his conduct in connection with an FELA case. If, for example, an employee removed documents or confidential files from the railroad's offices, disciplinary action would be appropriate for violation of the company's rules. We simply hold that a federal district court has jurisdiction to determine whether a disciplinary hearing is brought for purposes violative of § 60, or whether the railroad is attempting to discipline the employee for a violation of lawful company rules.[5]

It is clear from a review of the testimony before the investigating board that the actions of Hendley which were the subject of the investigation are within the protection of § 60. The railroad apparently charged that Hendley had made arrangements for Moore to go onto the property of Union Camp, had driven him in on a locomotive, and had assisted him in photographing the accident scene. The testimony at the hearing showed that Hendley did not make arrangements for Moore to enter the property; he did not even know that Razook would be accompanied by his attorney until he was met by Razook and Moore on Union Camp property. The men did not drive or ride a locomotive into the area. Hendley did not photograph the area or assist Moore in making photographs. Hendley's only "disloyalty" consisted of meeting Razook and his attorney on the property, discussing the physical layout of the tracks, and giving a deposition to be used in the case—conduct that falls within the protection of § 60.

Since Hendley's actions could not lawfully be the subject of disciplinary action and arbitration, any award made by the National Railroad Adjustment Board is null and void. We reverse, and remand to the district court to order that the award of the National Railroad Adjustment Board be set aside, and that Hendley receive full back pay for the time that he was suspended or unemployed as a result of the railroad's actions.

REVERSED and REMANDED.

**5.** The railroad argued that the plaintiff's appeal is moot, since the dispute has been processed to conclusion through the procedure of the National Railroad Adjustment Board. We find this contention to be without merit. The plaintiff initially requested that the court enjoin the railroad from conducting the proposed investigation and from interfering with the plaintiff's employment. Although the disciplinary proceeding itself has been concluded, the unlawful effects of the proceeding have not. The continued denial of back pay for the year that Hendley was unemployed is a present unlawful interference with Hendley's right of employment, and constitutes a continuing violation of § 60.