Robert M. CAVANAUGH, Appellee,

and

Martha E. Cavanaugh, Plaintiff,

v.

WESTERN MARYLAND RAILWAY COMPANY and Baltimore and Ohio Railroad Company, Appellants.

No. 82–1637.

United States Court of Appeals, Fourth Circuit.

Argued March 11, 1983.

Decided Feb. 29, 1984.

Fred Adkins, Huntington, W. Va. (Barbara Lee Ayres, Huddleston, Bolen, Beatty, Porter & Copen, Huntington, W. Va., Clarence E. Martin, III, Martin & Seibert, Martinsburg, W. Va., on brief), for appellants.

Donald R. Wilson, Charleston, W. Va. (E. Dixon Ericson, Preiser & Wilson, Charleston, W. Va., on brief), for appellee.

Before RUSSELL, HALL and CHAPMAN, Circuit Judges.

DONALD RUSSELL, Circuit Judge.

Pursuant to Fed.R.Civ.P. 54(b),[1] Western Maryland Railway Company (Western) and Baltimore & Ohio Railroad Company (B & O) appeal from an order of the district court dismissing their counterclaim for property damage in an action brought by Robert M. Cavanaugh (Cavanaugh) under the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51 *et seq.* The district court held that the maintenance of the railroads' counterclaim would violate §§ 5 and 10 of the FELA, 45 U.S.C. §§ 55 and 60, and thus would be contrary to the public policy reflected in such Act. We disagree and reverse.

Cavanaugh was employed by Western or B & O as a railroad engineer.[2] On February 12, 1980, the B & O train on which Cavanaugh was serving as engineer collided head-on with another B & O train proceeding in the opposite direction on tracks owned and controlled by B & O near Orleans Road in Morgan County, West Virginia. On November 19, 1981, Cavanaugh instituted this FELA action to recover one and a half million ($1,500,000) dollars for personal injuries sustained by him as a result of the collision. The railroads answered and counterclaimed under state law for property damage in the amount of one million, seven hundred thousand ($1,700,000) dollars, sustained by them as a result of the same accident. Cavanaugh moved to dismiss this counterclaim. The district court granted the motion, determined that there was no just reason for delay, and directed the clerk to enter final judgment on the counterclaim. This appeal followed.

In determining whether the railroads have a right of action which they can assert as a counterclaim in an FELA action begun by a railroad employee, we begin by recognizing that there is a well accepted common law principle that a master or employer has a right of action against his employee for property damages suffered by him "arising out of ordinary acts of negligence committed within the scope of [his] employment" by the offending em-

1. Rule 54(b) permits appeal from a judgment upon one or more but fewer than all of the claims presented in an action "upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

2. Cavanaugh alleged he "was employed by [the railroads], or one of them, as a railroad engineer." In their answer, the railroads admitted this allegation. We leave open the question whether either or both railroads was the "employer" of Cavanaugh within the meaning of the FELA. This question will have to be resolved by the district court in the first instance once all of the facts which may affect the answer to that question have been made a part of the record.

ployee. This was stated as the standard rule by the Court in *Stack v. Chicago, M., St. P. & P.R. Co.,* 94 Wash.2d 155, 615 P.2d 457, 459 (1980), which is the primary authority on which the plaintiff relies. It is also the law as declared generally in the Annotation in 110 A.L.R. 831, and is recognized and applied in *National Grange M.I. Co. v. Wyoming Cty. Ins. Ag., Inc.,* 156 W. Va. 521, 195 S.E.2d 151 (1973), as the law of West Virginia, where the accident occurred. Moreover, this right of action in favor of the employer or master may be asserted either in an independent action by the employer against the offending employee or by a counterclaim filed by the employer in the employee's action to recover for injuries sustained by him in the same occurrence.[3] But, if the employee sues the employer in federal court for injuries sustained in the occurrence the employer has no option; federal practice compels the employer-master to assert by way of a counterclaim his claim against the employee for damages caused by the employee's negligence to his (employer's) property under penalty of loss of his right of action.[4] *Mesker Bros. Iron Company v. Donata Corporation,* 401 F.2d 275, 279 (4th Cir. 1968), cited with approval in *Baker v. Gold Seal Liquors,* 417 U.S. 467, 469, n. 1, 94 S.Ct. 2504, 2506, n. 1, 41 L.Ed.2d 243 (1974). It follows that if the railroads in this case are denied the right to assert their claim against the plaintiff by way of a counterclaim, they could be denied any right of action ever to recover for the damages to their property suffered as a result exclusively of plaintiff's negligence and the plaintiff in turn could be given absolute immunity from any liability for his negligence both in this action and in any other action begun after judgment in the present action.

It is difficult to believe that such an unfair result is compelled. However, the plaintiff argues that the railroads are foreclosed by the terms of the FELA from asserting their claim against him by way of a counterclaim in his FELA action. The plaintiff does not point to any explicit language in the Act which could be said to require, or even suggest, such a sacrifice of the railroads' rights.[5] Nor does such absence appear to have been inadvertent. Congress demonstrated in other provisions of the Act that it understood well how to prohibit certain defenses and proceedings by the defending railroads, which it felt might unfairly prejudice the injured employee in the assertion of his right to recover. Thus, it precluded the defense of assumption of risk and substantially modified the defense of contributory negligence. It could as easily, had it intended such result, have barred the defending railroad from asserting by a counterclaim in such action its own claim for damages against the suing plaintiff for damages caused wholly by the negligence of that plaintiff, but it did not choose to do so. The plaintiff is accordingly reduced to contending that the proscription of such a counterclaim by the defending railroads is implicit in the language and the purpose of the Act. He would find the basis for such implication of a prohibition against a counterclaim by the railroads in the language of Sections 5 and 10 of the Act. We, therefore, direct our inquiry to those two Sections. We begin with Section 5.

■ Section 5 of the Act provides in pertinent part that "[a]ny contract, rule, regu-

---

**3.** Of course, in either event, the action may be defeated if the master or employer has contributed to his damages by his own negligence. *Kentucky & Indiana Terminal Railroad Company v. Martin,* 437 S.W.2d 944 (Ky.1969).

**4.** This result is a consequence of Rule 13(a), Fed.R.Civ.P., which defines a compulsory counterclaim under federal practice. Claims which must be asserted by counterclaim are "any claim[s] which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence

that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction."

**5.** We express no opinion as to whether barring in an FELA action of such a counterclaim, if coupled with Fed.R.Civ.P. 13(a)'s prohibition of assertion of the claim except by counterclaim, would amount to confiscation and bring into play constitutional considerations.

lation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void ...." [6] The plaintiff would find that the maintenance of the present counterclaim under review constituted a device contrived in violation of Section 5 "to deprive plaintiffs [in FELA actions] of their right to an adequate recovery" and "to chill justifiable FELA claims." [7] We do not find the argument persuasive.

Section 5 bars any "device" by the railroad which constitutes a contractual exemption from liability to its employees for personal injuries incurred by them in the course of their duties. Neither by its express language nor by its legislative history does Section 5 suggest in any way that the "device" at which the proscription of the Section was directed was intended to include a counterclaim to recover for the railroad's own losses incurred in connection with the accident out of which the injured employee's claim arose.[8] The plaintiff finds his basis for this argument in what he declares is the necessary implication of the Section to be derived from the use of the statutory term "device." It is no easy feat of linguistics to read a prohibition of a valid counterclaim as within the term "device" in the statute and this is particularly so in that such term is not left dangling in the statute without clarification. The term "device" is defined in the section. It is that "contract, rule, regulation, or device whatsoever, *the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter* (Italics added)." Such statutory definition is clear and, as we have said, it is controlling in determining whether a counterclaim such as the railroads seek to assert in this case is "void[ed]" as a proscribed "device" within the section. The critical word in this defini-

tion of "device" is "exemption." It is only when the "contract ... or device" qualifies as an "exempt[ion] itself from any liability" that it is "void[ed]" under Section 5. But a counterclaim by the railroad for its own damages is plainly not an "exempt[ion] ... from any liability" and is thus not a "device" within the contemplation of Congress.

This construction of the statutory definition of "device" is borne out by the legislative history of the section. In House Report No. 1386, 42 Cong.Rec. (1908), pp. 4436, *et seq.*, it is said:

"This provision [*i.e.,* Section 5] is necessary in order to make effective sections 1 and 2 of the bill. Some of the railroads of the country insist on a contract with their employees discharging the company from liability for personal injuries.

"In any event, the employees of many of the common carriers of the country are today working under a contract of employment which by its terms releases the company from liability for damages arising out of the negligence of other employees. As an illustration we quote one paragraph from a blank form of application for a situation with the American Express Company, and entitled 'Rules governing employment by this company:'

" 'I do further agree, in consideration of my employment by said American Express Company, that I will assume all risks of accident or injury which I shall meet with or sustain in the course of such employment, whether occasioned by the negligence of said company or any of its members, officers, agents, or employees, or otherwise; and that in case I shall at any time suffer any such injury, I will at once execute and deliver to said company a good and sufficient release, under my hand and seal, of all claims, demands, and causes of action arising out of such

---

**6.** 45 U.S.C. § 55.

**7.** This statement of plaintiff's position is taken basically from *Stack v. Chicago, M., St.P. & P.R. Co., supra,* 615 P.2d at 459.

**8.** If the statute itself provides any definition of the meaning of the term involved, that definition is controlling. *Conoco, Inc. v. Federal Energy Regulatory Com'n,* 622 F.2d 796, 800 (5th Cir.1980).

injury or connected therewith or resulting therefrom; and I hereby bind myself, my heirs, executors, and administrators, with the payment to said express company, on demand, of any sum which it may be compelled to pay in consequence of any such claim or in defending the same, including all counsel fees and expenses of litigation connected therewith.' "

Obviously, both from the language of the Section itself and from its legislative history, a counterclaim to recover damages in favor of the railroad because of the negligence of the plaintiff is not such a "contract ... or device" the purpose of which is to provide an exemption which Congress was intending to "void" in Section 5.

■ The second section from which the plaintiff would deduce a basis for implying a statutory bar against the railroads' counterclaim is section 10 of the Act.[9] Section 10 proscribes any "device" the "purpose, intent, or effect" of which would "prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee...." As the language plainly indicates, this section was intended to prevent the railroad from making inaccessible to an injured employee other railroad employees whose testimony might be helpful to the injured employee if he chose to sue the railroad or, as the Court in *Hendley v. Central of Georgia R. Co.*, 609 F.2d 1146, 1150–51 (5th Cir.1980), said: "This section prohibits a railroad from disciplining or attempting to discipline an employee for furnishing information to an FELA plaintiff." This purpose of the statute is stated at greater length in *Stark v. Burlington Northern, Inc.*, 538 F.Supp. 1061, 1062 (D.C.Colo.1982), where the Court said:

"The intent of the section was to attempt to equalize the access to information available to the highly efficient claim departments of the railroad and to the individual F.E.L.A. claimants, and to prohibit the promulgation and enforcement of rules which would inhibit the free flow of

information to claimants. *See* Senate Report No. 661, 76th Cong., 1st Sess. 2, 5 (1939). Its authors recognized the danger 'that railroad agents would coerce or intimidate employees to prevent them from testifying.' *Hendley, supra*, at 1150 [609 F.2d] The broad prohibition, 'by threat, intimidation, order, rule, contract, regulation or device,' indicates that § 60 was designed to prevent any direct or indirect chill on the availability of information to any party in interest in an F.E.L.A. claim. Therefore, the Act is to be read liberally."

The plaintiff, however, would find in this section some intention to proscribe a counterclaim by the railroad for damages sustained by it because the maintenance would make other parties privy to the accident reluctant to "participate during the initial investigation by the railroad, at hearings held by the National Transportation Safety Board, or at the trial of an FELA action maintained by a fellow employee" as a result of "the threat of a counterclaim for property damages [held] over the heads of those employees who have the misfortune to be involved in a railroad accident." It would seem that the plaintiff is saying that all railroad employees who have any knowledge of an accident must be given immunity from liability lest they be prevented "from voluntarily furnishing information" in support of plaintiff's action by the threatened possibility that they too would be sued by the railroad for their responsibility in connection with the accident. We cannot believe that Congress had any such far-fetched purpose in enacting section 10.

The plaintiff, however, finds lurking obscurely in the language of Sections 5 and 10 a legislative purpose to interdict counterclaims by defending railroads in FELA suits because the filing of such counterclaims will unfairly coerce or intimidate the injured employee from filing and pursuing his FELA action. As we have already observed, there is nothing in the language of the Act or its legislative history that sup-

---

**9.** 45 U.S.C. § 60.

ports this reasoning. More than that, there is no authority for an assumption that the possibility of a counterclaim being filed creates an unfair advantage in favor of the defendant or improperly coerces or intimidates the injured party from seeking redress for his injuries. Certainly Congress, in the course of enacting FELA never expressed any interest in denying to the defendant railroad the right of counterclaim because of any assumed prejudice thereby caused to the plaintiff in an FELA action and we do not think we should try almost eighty years after the FELA was originally enacted to read a prohibition of a counterclaim by the defending railroad into sections 5 or 10 on some fanciful notion that the maintenance of the counterclaim will prevent or prejudice the injured railroad employee in securing a fair award at the hands of the jury. The same argument could be advanced against the admissibility of a counterclaim in any tort action.

We would pose this hypothetical situation: The ruling of the district court would not prevent the railroads in this case from filing an independent action against the plaintiff-employee herein as a defendant to recover damages to its property as a result of his negligence. Assuming that the railroads can maintain such action, is the plaintiff-employee required under Rule 13(a), to assert his FELA claim as a counterclaim? If he is, we have substantially the same situation as we would have if the right of the railroads to counterclaim in the plaintiff's FELA action is recognized. If, however, the plaintiff-employee is not required to assert his FELA claim as a counterclaim in the railroads' independent action, will the plaintiff be barred by Rule 13(a) from asserting such claim in an action under FELA against the railroads after judgment in the railroads' independent action? We do not seek to answer these questions but pose them simply to emphasize the illogic of the ruling denying the railroads the right to counterclaim in the FELA action for their damages to their property resulting from the accident.

We recognize that the plaintiff finds support for his contrary conclusions in *Stack*

v. *Chicago, M.St.P. & P.R. Co.*, supra, 615 P.2d 457. In fact the reasoning of *Stack* is the basis for plaintiff's argument in this Court. We are not persuaded by such reasoning. So far as we have found, *Stack* has only been approved in one unreported district court case, *Shields v. Consolidated Rail Corporation*, No. 81 Civ. 4204 (S.D. N.Y., Dec., 1981). On its facts, though, this latter case could probably be distinguished from this case but we accept it as contrary to our view. However, there are at least two unreported district court opinions in which the same view as expressed by us was adopted, *Consolidated Rail Corp. v. Dobin, Adm'r.*, Case No. 82–2539 (E.D.Pa.1981); *Key v. Kentucky & Indiana Terminal R. Co.*, Case No. C–78–0313–L(A) (W.D.Ky.1979); and one reported case, *Cook v. St. Louis-San Francisco R. Co.*, 75 F.R.D. 619 (W.D.Okl.1976), in which the opinion, though dealing directly with another issue, showed that the court in that case had ruled that the railroad could maintain a counterclaim in an FELA case filed by an injured railroad worker; and in *Kentucky & Indiana Terminal Railroad Company v. Martin*, 437 S.W.2d 944 (Ky.1969), and *Capitola v. Minneapolis, St.P. & S.M.R. Co.*, 258 Minn. 206, 103 N.W.2d 867 (1960), the same right was recognized. In the contest of precedents, it would appear that the balance tilts sharply in favor of the allowability of the counterclaim herein. More important for us, though, reason and justice support that view.

■ Finding nothing in either section 5 or section 10 of the FELA from which it can be reasonably implied that Congress intended the illogical result of proscribing the filing of a counterclaim by the railroads in an FELA case to recover for property damages sustained by reason of the sole negligence of the plaintiff-employee in that action, we reverse the ruling of the district court dismissing the defendant-railroads' counterclaim and remand the cause for further proceedings not inconsistent with this decision. In remanding, however, we direct that, the district court shall, on re-

mand, order the FELA case and the counterclaim be tried separately. This has been the manner in which similar cases seem to have been handled. *See Cook v. St. Louis-San Francisco R. Co., supra.*

REVERSED and REMANDED.

K.K. HALL, Circuit Judge, dissenting.

I disagree with the majority's conclusion that the maintenance of the railroads' counterclaim does not violate the Federal Employers' Liability Act (the "FELA"), 45 U.S.C. § 51 *et seq.* Nor can I agree with the majority's failure to hold that the counterclaim is contrary to the public policy reflected in the FELA. I therefore dissent.

Contrary to the majority's assertion, the language of the FELA supports the conclusion that Congress intended to prohibit counterclaims, such as the one filed by the railroad here,[1] because the filing of such counterclaims will unfairly coerce or intimidate the injured employee from filing and pursuing his FELA action. Specifically, section 5 of the FELA provides in part that: "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void ...." 45 U.S.C. § 55. Section 10 of the FELA further provides in pertinent part that: "Any contract, rule, regulation, or device whatsoever, the purpose, intent or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be

void, ..." 45 U.S.C. § 60. In my view, the majority construes these statutes too narrowly.

The Supreme Court of Washington considered these statutes in *Stack v. Chicago, Milwaukee, St. Paul and Pacific Railroad Company,* 94 Wash.2d 155, 615 P.2d 457 (1980) (en banc). In *Stack,* a brakeman injured in a head-on collision of two trains and the widow of an engineer killed in the same collision brought actions against the railroad under the FELA. The railroad counterclaimed against the engineer and filed a third-party claim against the remaining crew members seeking 1.5 million dollars in property damage resulting from the collision. The Supreme Court of Washington held unanimously that the railroad's counterclaim and third-party claim "constituted 'devices contrived to deprive plaintiffs of their right to an adequate recovery and operated to chill justifiable FELA claims in violation of 45 U.S.C. 55 and 60." 94 Wash.2d at 159, 615 P.2d at 459. I agree.

The single overriding purpose of the FELA is to provide compensation for injured railroad workers. It accomplishes this purpose by imposing liability upon railroads for injuries to their employees resulting from the railroads' negligence. 45 U.S.C. § 51. As explained by the Supreme Court in *Sinkler v. Missouri Pacific Railroad Company,* 356 U.S. 326, 78 S.Ct. 758, 2 L.Ed.2d 799 (1958), the FELA

> was a response to the special needs of railroad workers who are daily exposed to the risks inherent in railroad work and are helpless to provide adequately for their own safety. The cost of human

---

1. At oral argument before the district court, counsel for the railroads acknowledged that railroads generally do not bring actions against their employees for property damage because they have no reasonable expectation of recovery and because their employees may in fact be judgment proof. In this case, the railroads did not assert their claim for property damage until approximately one year and nine months after the accident when Cavanaugh instituted his FELA action. In fact, counsel for the railroads admitted to the district court that:

> In this case, [Cavanaugh] is not going to be judgment proof when he recovers a vast sum

of money, which he is attempting to recover from the Railroads.

> As a matter of fact, he is going to be a rich man once he recovers, and can establish a right to recovery. And that is why this [counterclaim] has been asserted ....

Tr. 78. Thus, it is clear to me that the railroads filed their counterclaim either to coerce Cavanaugh into settling his claim or, if his FELA action proceeded to trial, to strip him of any damages by means of an offset. I cannot agree that Congress intended to sanction such a motive.

injury, an inescapable expense of railroading, must be borne by someone, and the FELA seeks to adjust that expense equitably between the worker and the carrier.

*Id.* at 329, 78 S.Ct. at 762 (citations omitted). The FELA departs from the common law, *id.*, and supplants state laws with a nationwide uniform system of liberal remedial rules. *South Buffalo Ry. Co. v. Ahern,* 344 U.S. 367, 371, 73 S.Ct. 340, 342, 97 L.Ed. 395 (1953). It provides injured railroad workers with their exclusive remedy against their employers for injuries resulting from their employers' negligence. *New York Central Railroad Company v. Winfield,* 244 U.S. 147, 151–52, 37 S.Ct. 546, 548, 61 L.Ed. 1045 (1917). Section 5 of the FELA, 45 U.S.C. § 55, voids releases or "[a]ny ... other device[s] whatsoever" which enable railroads to exempt themselves from liability for their employees' injuries under the FELA.[2] *Stack,* 94 Wash.2d at 161, 615 P.2d at 461, (quoting *Kozar v. Chesapeake & Ohio Ry.,* 320 F.Supp. 335, 383–85 (W.D.Mich.1970), *vacated in part on other grounds,* 449 F.2d 1238 (3d Cir.1971)).

In my view, the railroads' counterclaim is a "device" calculated to intimidate and exert economic pressure upon Cavanaugh, to curtail and chill his rights, and ultimately to exempt the railroads from liability under the FELA. Here, as in *Stack,* the railroads' counterclaim violates 45 U.S.C. § 55 "because the ultimate threat of 'retaliatory' legal action would have the effect of limiting [the railroads'] liability by discouraging employees from filing FELA actions. Further, it would have the effect of reducing an employee's FELA recovery by the amount of property damage negligently caused by the employee." 94 Wash.2d at 160, 615 P.2d at 460. To allow the railroads' counterclaim to proceed would per-

vert the letter and spirit of the FELA and would destroy the FELA as a viable remedy for injured railroad workers. The result sought by the railroads, and accepted by the majority, defies common sense and is repugnant to the general goal of the FELA to compensate railroad workers for injuries negligently inflicted by their employers.

In addition, the railroads' counterclaim contravenes 45 U.S.C. § 60 in that it would prevent employees from voluntarily furnishing information regarding the extent of their negligence. *Stack,* 94 Wash.2d at 159, 615 P.2d at 460. The FELA "is intended to stimulate [railroads] to greater diligence for the safety of their employees and of the persons and property of their patrons." *Jamison v. Encarnacion,* 281 U.S. 635, 640, 50 S.Ct. 440, 442, 74 L.Ed. 1082 (1929). As long as a railroad is permitted to hold the threat of a counterclaim for property damage over the heads of those employees who have the misfortune to be involved in a railroad accident, those witnesses, whether injured or not, may well be reluctant to participate during the initial investigation by the railroad, at hearings held by the National Transportation Safety Board, or at the trial of an FELA action maintained by a fellow employee.

Nor can I agree with the majority that "[i]n the contest of precedents ... the balance tilts sharply in favor of the allowability of the counterclaim herein." The majority's reliance on *Kentucky & Indiana Terminal Railroad Company v. Martin,* 437 S.W.2d 944 (Ky.1969), and *Capitola v. Minneapolis, St. P. & S.M.R. Co.,* 258 Minn. 206, 103 N.W.2d 867 (1960), is misplaced. In *Martin,* the issue of whether a counterclaim could be maintained in an FELA action was neither argued by the parties nor considered by the court. The dismissal of the counterclaim was upheld on the ground

---

**2.** The majority acknowledges that a contract of employment releasing the railroad from liability for personal injuries is void under § 5 but reasons that "a counterclaim by the railroad for its own damages is plainly not an 'exempt[ion] ... from any liability' and is thus not a 'device' within the contemplation of Congress." I cannot agree.

The effect of a release or a counterclaim on an injured railroad employee is the same. In both cases, he will be denied compensation for his injuries caused by the railroad's negligence and in the final analysis, the railroad will be exempt from liability. It is this intolerable result which Congress intended to prevent by enacting § 5.

that the railroad's negligence foreclosed its recovery on the counterclaim. *Martin*, 437 S.W.2d at 951. In *Capitola* it was "unnecessary to consider whether a counterclaim may be maintained in an F.E.L.A. action." *Capitola*, 103 N.W.2d at 870.

The majority also relies on two unreported district court opinions, *Consolidated Rail Corp. v. Dobin, Adm'r*, No. 82–2539 (E.D.Pa.1981), and *Key v. Kentucky & Indiana Terminal R. Co.*, No. C–78–0313–L(A) (W.D.Ky.1979). In this Circuit, citation of unpublished decisions is disfavored. *See* 4th Cir. Local Rule 18(d). It is impossible to determine if these unreported opinions represent the judicial mainstream of thought because "for every [trial court] decision cited by counsel there might be a dozen adverse decisions outstanding but undiscovered." *Adams Dairy Company v. National Dairy Products Corp.*, 293 F.Supp. 1135, 1151 n. 18 (W.D.Mo.1968). Moreover, in *Key*, without setting forth any reasoning, the district court summarily denied the employee's motion to dismiss the railroad's counterclaim or to sever the trial of the counterclaim from the trial of the complaint. Such a cryptic order in a case that was ultimately dismissed as settled can provide no guidance for the present appeal.

Finally, *Cook v. St. Louis-San Francisco R. Co.*, No. Civ. 75–0791–D (W.D.Okl. Aug. 3, 1977), cited by the majority, forcefully illustrates the unjustness of the majority's decision. In *Cook*, the plaintiff was a fifty-four year old conductor who earned $18,000 when he was seriously injured as a result of a freight train collision. The jury returned a verdict of $46,000 on the plaintiff's FELA complaint and a verdict of $1,197,250.98 on the railroad's counterclaim. Thus, the plaintiff was left with no compensation for his injuries and a judgment debt of more than 1.1 million dollars. I cannot believe that Congress intended such an absurd result.

For the foregoing reasons, I would affirm the judgment of the district court.