Bruce E. HORNSBY, Plaintiff,

v.

ST. LOUIS SOUTHWESTERN RAILWAY COMPANY, Defendant.

No. LR–C–89–364.

United States District Court, E.D. Arkansas, W.D.

Jan. 2, 1991.

Paul E. Herrod, Herrod, McGough & Herrod, North Little Rock, Ark., and John C. Sands, Sands and Trafelet, Chicago, Ill., for plaintiff.

Spencer F. Robinson, Ramsay, Bridgforth, Harrelson & Starling, Pine Bluff, Ark., for defendant.

## MEMORANDUM OPINION

ROY, District Judge.

This is an action for declaratory and equitable relief pursuant to the Federal Employers' Liability Act (the "Act"), 45 U.S.C. § 51–60. Specifically, plaintiff asks the Court to declare that his termination by defendant violated 45 U.S.C. § 60, to direct defendant to compensate him for all back pay he has lost, and to reinstate him to his former position. This cause was tried to the Court on July 9, 10 and 13, 1990. The parties have received copies of the trial transcript and filed their post-trial briefs and proposed findings of fact and conclusions of law. Thus, this matter is ripe for adjudication.

Plaintiff was employed by defendant from 1965 until his discharge on May 30, 1987. Plaintiff worked as a brakeman for the first five years of his employment and as a conductor for the last 17 years. On April 21, 1982, plaintiff was directed to report to defendant's yard in Pine Bluff, Arkansas to serve as part of a six-man crew assigned to move a train of freight cars to Jonesboro, Arkansas. While the consist of three engines was being moved within the yard for coupling with the freight cars, one of the brakemen, Clarence Broome, suffered an injury to his back as he threw, or lined, a switch. After Broome returned to the lead engine, the consist was moved back to the caller's office and Broome was assisted into that office by other crew members. Ashley Spears, Assistant Train Master, met Broome in the caller's office to check on his condition.

While in the office with Broome, Spears was advised that the other crew members wanted to talk to him. Spears contacted the crew with his portable radio and spoke with plaintiff. Spears testified that plaintiff asked if the crew members needed to fill out a Form 2611, defendant's required report used for accident investigations, before their train pulled out. He also testified that plaintiff stated that none of the crew had seen the accident. Spears further testified that he advised plaintiff that it was not necessary for them to complete the forms at that time and that it would be sufficient if they did so before they returned to Pine Bluff. Spears was "positive" that it was plaintiff he talked to on the radio that evening. After talking with plaintiff, Spears took Broome to the hospital for medical attention.

Each of the five remaining crew members filled out a Form 2611 the next day concerning Broome's accident. Consistent with what plaintiff told Spears the night of the occurrence, the forms revealed that none of the other crew members witnessed the accident. On his form, in response to the question, "Did you see the accident?," plaintiff simply wrote "no." In response to the request that the employee state how the accident occurred, plaintiff stated that "Brakeman Broome said he injured his back while trying to line crossover switch at roundhouse." Steve Sindick, a claims agent for defendant who was assigned to Pine Bluff at the time of the accident, testified that he did not undertake to interview any of the other crew members after learning from the 2611 reports that none of them had seen the accident.

Plaintiff testified that he also submitted another of defendant's forms, a Form 2957, concerning this accident, which he testified he filled out on April 23, 1982. Plaintiff claims that in the 2957 he stated he saw the accident. The only Form 2957 produced at trial, and introduced into evidence, was one prepared by C.R. Rickels, Chief Clerk to the Terminal Superintendent. Although plaintiff suggests that Rickels used information obtained from plaintiff's 2957 in completing the form introduced into evi-

dence, Rickels testified that none of the information he relied upon in filling out the form was obtained from plaintiff. Neither the original nor a copy of the 2957 allegedly submitted by plaintiff was discovered or produced, and no other evidence substantiating plaintiff's claim of having submitted one was presented.

Nearly four years later, on January 27, 1986, plaintiff gave a statement concerning the accident in question to Rick Rosen, the lawyer retained by Broome to represent him in a personal injury lawsuit against defendant in the State of Illinois. This statement was provided to John Gunn, defendant's attorney in that case, in August of 1986. On September 12, 1986, Gunn took a statement from plaintiff in the Claims Department in Pine Bluff. In both statements, plaintiff claimed that he was an eyewitness to Broome's accident. Subsequently, on April 22, 1987, plaintiff appeared at the Broome trial in Illinois and testified on Broome's behalf. After several days of trial, the jury returned a verdict in the amount of $1,200,000.00 in favor of Broome and against defendant.

Carl Bradley, the terminal superintendent at Pine Bluff at the time of the Broome accident, and Ashley Spears were also called as witnesses at Broome's trial. Both Bradley and Spears testified at the trial of the instant case that it was at Broome's trial that they first learned that plaintiff claimed to have witnessed Broome's accident. In corroboration of that testimony, Gunn testified that he did not provide a copy of either of plaintiff's 1986 statements to anyone in defendant's operating department.

When Spears returned to Pine Bluff after the completion of Broome's trial, he advised Robert McClanahan, defendant's Division Superintendent, of what transpired in the trial. Soon thereafter, the decision was made to investigate the cause of, or reason for, the discrepancies between what plaintiff said in 1982 and his testimony at the trial in 1987. On May 6, 1987, plaintiff was officially notified that an investigation was being commenced into what appeared to be a possible violation of company rules concerning dishonesty and immorality. McClanahan appointed W.M. Taylor to serve as the hearing officer on the charges against plaintiff.

After a hearing that lasted eight days, Taylor recommended to McClanahan that plaintiff be terminated from employment with defendant. McClanahan decided, after conducting a rather thorough review of the hearing proceedings, that plaintiff had not satisfactorily explained the considerable discrepancies between his 1982 and 1986–87 accounts of the incident. McClanahan decided that termination was appropriate and plaintiff was informed by a letter from Taylor dated May 30, 1987 that he was being discharged for dishonesty and immorality in violation of Rule L(4) and (5) of the General Code of Operating Rules and Rule 607 in Time Table Special Instructions No. 5.

Acting through his union, the United Transportation Union ("UTU"), plaintiff appealed his dismissal pursuant to the provisions of the Railway Labor Act. After his attempts to have the dismissal set aside proved unsuccessful at all lower levels of the appeals process, plaintiff ultimately appealed to Special Board of Adjustment 100 ("Board"). On March 1, 1989, the Board rendered its decision, Award 484, on plaintiff's case. The board found that there was substantial evidence to support the conclusion that plaintiff had been dishonest and had violated company rules in so doing. The Board further found that defendant was justified in terminating plaintiff on account of his lack of candor and truthfulness with respect to the Broome accident. Plaintiff did not avail himself of his right to appeal the Board's decision under the Railway Labor Act. Instead, on May 16, 1989, plaintiff filed the instant action seeking the relief set out hereinabove.

The Court is of the opinion that the only issue to be decided in this matter is whether defendant violated 45 U.S.C. § 60 in terminating plaintiff.[1] Section 60 provides,

---

1. Although plaintiff asserts that the investigation was commenced well after the expiration of

20 days from the time defendant learned of the differing statements, allegedly in violation of

**760**

in essence, that anyone who attempts to prevent a railroad employee from voluntarily furnishing information about work-related accidents to an interested party, or discharges or disciplines an employee for furnishing such information, is subject to criminal penalties. In the civil context, it has been found that § 60 gives a federal district court jurisdiction to both order the reinstatement of an employee discharged in violation of that section and to award back pay for all income lost as a result of the employer's wrongful conduct. *See Hendley v. Central Georgia Railroad Company,* 609 F.2d 1146 (5th Cir.1980), *cert. denied,* 449 U.S. 1093, 101 S.Ct. 890, 66 L.Ed.2d 822 (1981).

■■■ However, it has also been specifically found that "the Act was not designed to protect FELA witnesses if they deliberately give information known by them to be false." *Gonzalez v. Southern Pacific Transportation Company,* 773 F.2d 637, 642 (5th Cir.1985). After careful review of the testimony and exhibits presented at trial, and consideration of all applicable law, the Court finds that the discrepancies between plaintiff's various statements about the Broome accident were not the product of innocent mistake, but, rather, were the result of intentional deception on plaintiff's part. Where plaintiff's testimony was in conflict with that of Ashley Spears, the Court finds Spears to have been the more credible witness. In accordance with *Gonzalez,* the Court finds that 45 U.S.C. § 60 presents no barrier to plaintiff's discharge for violation of company rules concerning dishonesty and immorality. Having found that plaintiff was guilty of dishonesty in violation of defendant's rules, the Court further finds that plaintiff is entitled to no protection under the statute. Judgment in accordance with this Opinion shall be filed contemporaneously herewith.

the collective bargaining agreement between UTU and defendant, the Board found that defendant did not "learn" of the divergence between the statements until the Broome trial in April of 1987. Thus, the Board concluded that the 20-

JUDGMENT

Pursuant to the Opinion entered in this matter on this date, it is Considered, Ordered and Adjudged that plaintiff's complaint should be, and it is hereby, dismissed with prejudice. The relief sought therein is denied. Each party shall bear its own costs herein.

day limitation was not violated. Inasmuch as plaintiff chose not to appeal the Board's determination, the Court finds that this issue is not before it in this litigation.