57 F.3d 1066
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 William L. JONES; J.H. Wright, Plaintiffs-Appellants,
v.
NORFOLK SOUTHERN CORPORATION; NORFOLK SOUTHERN RAILWAY
COMPANY; F.W. Stevenson; Will Hardin,
Defendants-Appellees.
 No. 94-1947.
 United States Court of Appeals, Fourth Circuit.
 Argued: April 5, 1995.
Decided: June 9, 1995.
 
 ARGUED: Kenneth Evan Rudd, C. Marshall Friedman, P.C., St. Louis, MO, for Appellants. Frank Huger Gibbes, III, Gibbes & Clarkson, P.A., Greenville, SC, for Appellees. ON BRIEF: C. Marshall Friedman, Douglas K. Rush, C. Marshall Friedman, P.C., St. Louis, MO, for Appellants. Stephanie H. Burton, Gibbes & Clarkson, P.A., Greenville, SC; William P. Stallsmith, Mark Perreault, Norfolk Southern Corporation, Norfolk, VA, for Appellees.
 Before NIEMEYER, HAMILTON, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 In this Federal Employers' Liability Act (FELA) suit, 45 U.S.C. Secs. 51-60, Appellants William L. Jones and J.H. Wright appeal the district court's entry of judgment following a bench trial and denial of their request for a permanent injunction in favor of Appellees Norfolk Southern Corporation, Norfolk Southern Railway Co. (collectively Norfolk Southern), F.W. Stevenson, and Will Hardin. Appellants contend that the district court erred in concluding that 45 U.S.C. Sec. 60 does not protect Wright from disciplinary proceedings initiated by Norfolk Southern in retaliation for arranging a meeting regarding an on-the-job injury. Upon careful consideration of the arguments by counsel and review of the trial record, we affirm.
 
 I.
 
 2
 Jones and Wright are employed by Norfolk Southern, respectively, in the positions of blacksmith/welder and carman. On May 30, 1990, Jones allegedly suffered an injury in the course of his employment. Jones thereafter retained the law firm of C. Marshall Friedman, P.C. to represent him and to pursue a FELA claim against Norfolk Southern. On April 19, 1991, Jones requested that Wright ask three other Norfolk Southern employees, S.L. Southern, F.J. Lambert, and B.S. Bayne, to speak with a representative of the Friedman law firm about Jones's lawsuit. During the lunch break that day, Wright spoke with Southern, Lambert, and Bayne who, thereafter, met with a representa tive from the Friedman firm. Wright was not present at the meeting nor was he identified by Jones as a witness in his FELA suit later filed in December of 1991.
 
 
 3
 During subsequent recorded statements made by Southern, Lambert, and Bayne to William Harden, a Norfolk Southern claim agent, Harden became concerned that Wright had served as an intermediary, arranging the meetings between Southern, Lambert, Bayne and the Friedman firm. Consequently, on or about January 17, 1994, Norfolk Southern began a preliminary investigation of Wright on charges of disloyalty and conduct unbecoming an employee pursuant to Rule 34 of its Collective Bargaining Agreement. At the conclusion of the preliminary proceedings, Norfolk Southern's Assistant Shop Manager, F.W. Stevenson, advised Wright by letter that a formal investigation would be held to determine whether Wright's acts constituted "conduct unbecoming an employee and acting in a disloyal manner by asking Blacksmiths S.L. Southern, F.J. Lambert, and B.S. Bayne to meet with a [member] of a law firm ... representing Blacksmith W.L. Jones in a lawsuit against the carrier." (J.A. 50).
 
 
 4
 On January 20, 1994, Wright and Jones filed a verified complaint in the District of South Carolina seeking both temporary and permanent injunctive relief prohibiting Norfolk Southern from conducting a formal disciplinary investigation or imposing discipline upon Wright. Soon thereafter, the parties entered into a consent order postponing the formal investigation of the charges against Wright pending resolution of the lawsuit. Following a bench trial on June 6, 1994, the district court denied Appellants' request for injunctive relief by order dated June 20, 1994. In its order the court made detailed findings of fact, determining in pertinent part that rather than involving Wright as an intermediary, Jones himself could have asked Lambert, Bayne, and Southern to meet with his legal counsel in the underlying FELA claim. The court further found that the investigation of Wright had "not had the effect of stifling the free flow of information relative to Jones and his case." (J.A. 61) (emphasis in original). Appellants timely appealed.
 
 II.
 
 5
 We review de novo the narrow legal question whether Wright's function as an intermediary between Jones, his counsel, and the three other employees constitutes protected conduct under Sec. 10 (hereinafter Sec. 60) of the Federal Employers Liability Act, 45 U.S.C. Sec. 60. Virginia Carolina Tools, Inc. v. International Tool Supply, Inc., 984 F.2d 113, 116 (4th Cir.), cert. denied, 113 S.Ct. 2930 (1993).[1] This provision specifies in pertinent part:
 
 
 6
 Any contract, rule, regulation, or device whatsoever, the purpose, intent, or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void, and whoever, by threat, intimidation, order, rule, contract, regulation, or device whatsoever, shall attempt to prevent any person from furnishing voluntarily such information to a person in interest, or whoever discharges or otherwise disciplines or attempts to discipline any employee for furnishing voluntarily such information to a person in interest, shall, upon conviction thereof, be punished by a fine or not more than $1,000 or imprisoned for not more than one year, or by both such fine and imprisonment, for each offense: Provided, That nothing herein contained shall be construed to void any contract, rule, or regulation with respect to any information contained in the files of the carrier, or other privileged or confidential reports.
 
 
 7
 45 U.S.C. Sec. 60 (1988). The intent of this section was to prevent a railroad from denying an injured employee access to other railroad employees for the purpose of eliciting testimony helpful to his or her suit against the railroad. Cavanaugh v. Western Maryland Ry. Co., 729 F.2d 289, 293 (4th Cir.), cert. denied, 469 U.S. 872 (1984) (counterclaim filed by a railroad in a FELA case to recover property damages sustained by reason of the sole negligence of plaintiff-employee is not precluded by Sec. 60); see also Reinhardt v. Benefit Trust Life Ins. Co., 819 F.2d 494, 495 (4th Cir.1987) (affirming dismissal of claim because activity in question, the distribution of a pamphlet entitled "How to Protect your Right When Injured on the Job," pertained to general legal rights rather than facts related to a specific accident).
 
 
 8
 Discerning no ambiguity in the language of Sec. 60, we look to its plain meaning.[2] Section 60 prohibits employers from disciplining employees for engaging in protected activity.[3] Conversely, the language defining protected employee conduct narrowly limits the application of Sec. 60 to the actions of an employee who "furnish[es] voluntarily information to a person in interest as to the facts incident to the injury or death of any employee." 45 U.S.C. Sec. 60.
 
 
 9
 The record below reflects that Wright acted as a liaison between Jones, his counsel, and the three potential witnesses, Lambert, Bayne, and Southern. Wright, having no personal knowledge of facts incident to Jones's injury, was not a potential witness in the underlying FELA action. Instead, Wright contacted Lambert, Bayne, and Southern on behalf of Jones and requested that they meet with Jones's counsel to disclose their understanding of the facts giving rise to Jones's FELA claim. Although perhaps of assistance to Jones in the investigation of his case, Wright's well-meaning actions lack two essential attributes necessary to receive Sec. 60 protection. First, to the extent Wright's actions as an intermediary can be characterized as the "furnishing" of "information," the information he provided was not "as to the facts incident to the injury" of Jones. Wright was not personally familiar with any of the facts or circumstances of Jones's accident. He acted merely as a messenger for Jones. Indeed, the district court explicitly found that, rather than involving Wright as an intermediary, Jones himself could have asked Lambert, Bayne, and Southern to meet with his legal counsel concerning the underlying FELA claim.
 
 
 10
 Second, rather than conveying information of any kind to a "person in interest," Wright merely passed a message from Jones to Lambert, Bayne, and Southern requesting that they meet with Jones's lawyer. None of these potential witnesses had an interest in the outcome of Jones's underlying FELA claim, nor were they parties in the case below. Thus, the nature of the information Wright imparted and the identity of the recipients of his message preclude us from according Sec. 60 protection to his conduct.
 
 III.
 
 11
 Finally, Appellants contend that the disciplinary proceedings initiated against Wright effectively prevented employees from voluntarily furnishing information to a person in interest. The district court, however, explicitly found that "the investigative process had not had the effect of stifling the free flow of information relative to Jones and his case." (J.A. 61) (emphasis in original). After careful review of the record, we cannot conclude that the court below was clearly erroneous in reaching that factual finding. Crawford v. Air Line Pilots Ass'n Int'l, 992 F.2d 1295, 1297 (4th Cir.), cert. denied, 114 S.Ct. 195 (1993).
 
 IV.
 
 12
 We therefore uphold the district court's determination that 45 U.S.C. Sec. 60 affords no protection for Wright's actions and affirm the district court's denial of Appellants' request for a permanent injunction.
 
 AFFIRMED
 
 
 [1]
 Because this appeal is limited to a review of the district court's Sec. 60 analysis, we do not address the propriety of Norfolk Southern's formal investigation or any resulting disciplinary action which is subject to review under the Railway Labor Act, 45 U.S.C. Sec. 151 et seq. (1988), and the terms of the Collective Bargaining Agreement
 
 
 [2]
 Citing to a decision from the United States District Court for the District of Colorado, Stark v. Burlington Northern, Inc., 538 F.Supp. 1061, 1063 (D. Colo.1982), Appellants urge us to conclude that Wright's activities giving rise to the disciplinary action should be accorded Sec. 60 protection. We decline, however, Appellants' implicit invitation to adopt a "balancing test" not evident in the language of Sec. 60 but nevertheless articulated by the district court in Stark. See id. We rely rather on the unambiguous statutory language of Sec. 60 as consistently applied both by this Court and our sister circuits. Cavanaugh, 729 F.2d at 293; Reinhardt, 819 F.2d at 495; Woodrum v. Southern Ry. Co., 750 F.2d 876, 883 (11th Cir.) (declining to extend Sec. 60 protection to arranging meetings between attorney and prospective FELA claimants), cert. denied, 474 U.S. 821 (1985); Sheet Metal Workers Int'l. Ass'n v. Burlington Northern R. Co., 736 F.2d 1250, 1252 (8th Cir.1984) (attorney retained by injured worker for the purpose of pursuing a FELA claim constitutes a "person of interest" under Sec. 60); Hendley v. Central of Georgia R. Co., 609 F.2d 1146, 1153 (5th Cir.1980) (meeting FELA plaintiff and his attorney at the location of injury and providing deposition to be used in claim falls within the protection of Sec. 60), cert. denied, 449 U.S. 1093 (1981)
 
 
 [3]
 We note the high degree of generality reflected in the term "[a]ny ... device whatsoever." However, we look to the illustrative language relating to discipline or attempted discipline as representing the employer conduct at issue in this appeal. 45 U.S.C. Sec. 60