**C.H.B. FOODS, INC., Plaintiff,**

v.

**Manuel REBELO, Defendant.**

**Manuel REBELO and Marie Bella Rebelo, Counter-claimant,**

v.

**PAN PACIFIC FISHERIES, C.H.B. Foods, Inc., a corporation, and M/V PAN PACIFIC, Counter-defendants.**

**CALIFORNIA HOME BRANDS, INC., Pan Pacific Fisheries, Plaintiffs,**

v.

**Danny FERREIRA, Defendant.**

Civ. Nos. 85–2768–B(M), 87–0295–B(IEG).

United States District Court, S.D. California.

June 11, 1987.

Lillick, McHose & Charles, San Diego, Cal., for plaintiff.

Irwin M. Zalkin, William A. Bernard, Law Offices of Zalkin & Levy, San Diego, Cal., for defendant Danny Ferreira.

Frank S. Clowney, III, Law Offices of John A. Marin, San Diego, Cal., for defendants Manuel & Marie Bella Rebelo.

## MEMORANDUM DECISION AND ORDER

BREWSTER, District Judge.

### I.

In January, 1985, Manuel Rebelo was injured while working aboard the M/V Pan Pacific. Defendant Danny Ferreira, Rebelo's son-in-law, was the deck boss of the Pan Pacific. The Pan Pacific was owned and operated by plaintiffs C.H.B. Foods, Inc., ("CHB") and Pan Pacific Fisheries ("Fisheries").

After his injury in 1985, Rebelo began submitting claims for maintenance and cure to CHB. In response, CHB filed a declaratory relief action against Rebelo requesting that the court declare that CHB had no obligation to provide maintenance and cure to Rebelo. That declaratory relief action is case number 85–2768–B(M). In December, 1985, Rebelo and his wife counter-claimed against CHB, Fisheries, and the M/V Pan Pacific for damages caused by Rebelo's injuries.

More than a year later, in January, 1987, CHB and Fisheries moved for leave to file a third-party complaint for indemnity and contribution against Danny Ferreira. This court denied that motion on the ground that the motion was untimely. CHB and Fisheries then filed their action for indemnity and contribution as a complaint in case 87–0295–B(IEG). The parties stipulated to the consolidation of cases 87–0295–B(IEG) and 85–2768–B(M).

Defendant Danny Ferreira now moves to dismiss the complaint for indemnity and contribution in case number 87–0295–B(IEG) on the ground that it fails to state a cause of action. Ferreira contends that CHB and Fisheries, his employers, are not permitted to sue him for indemnity and contribution under the maritime law. Fer-reira argues (1) that plaintiffs have no claim against Ferreira for unseaworthiness, maintenance, and cure, or for negligence because Rebelo could not have sued Ferreira under these theories; (2) that even if Rebelo could have sued Ferreira, there is no cause of action for contribution because under the maritime law damages are apportioned among joint tortfeasors in proportion to their comparative fault; (3) that the Federal Employers Liability Act ("FELA"), 45 U.S.C. §§ 55, 60 (1982), bars this action; (4) that analogous cases involving longshoremen suggest that this action should not be permitted; and (5) that public policy weighs against permitting this action.

The plaintiffs respond by arguing that there are no cases forbidding suits for indemnity and contribution. They point out that in assault cases shipowners are permitted to sue their employees for damage caused by their willful acts. They also point out that the Limitation of Shipowners' Liability Act, 46 U.S.C. § 187 (1982), preserves any right of action which might have been available against a seaman under prior law. The plaintiffs distinguish the longshoremen cases and railway cases decided under the FELA. And finally, they too contend that public policy suggests that their action against Ferreira should be permitted.

### II.

The issue on these motions is whether a vessel owner and employer may sue a seaman for indemnity and contribution for damages paid to a co-seaman injured in the course of his duties and not caused by assault. Both parties cite cases from a number of different areas of law which they claim are analogous. These cases fall roughly into four categories: the Supreme Court's decisions concerning maritime indemnity and contribution; cases in which employers have filed third-party claims or counter-claims for property damage in personal injury cases; and maritime assault cases in which the courts have ordered employees to indemnify their employers. These cases are helpful to some extent,

but, with the exception of one,[1] none of them addresses the exact issue raised by this motion.

A. *The Supreme Court Contribution Cases.* The Supreme Court contribution cases begin with *Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp.,* 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318 (1952). In that case, Halcyon hired Haenn to make repairs on Halcyon's ship. Haenn's employee, Bacile was injured aboard the ship while performing the repairs. Bacile could not sue Haenn for his injuries because Bacile and Haenn were covered by the Longshoremen's and Harbor Workers' Compensation Act (the "Harbor Workers' Act"), 33 U.S.C. §§ 901–950 (1982).[2] The Harbor Workers' Act, like worker's compensation, provides automatic payment for work-related injuries but denies longshoremen a right of action against their employers. Unable to sue Haenn, Bacile sued Halcyon. Halcyon brought Haenn in as a third-party defendant. The jury found Halcyon 25 percent responsible and Haenn 75 percent responsible for Bacile's injuries. When the case eventually reached the Supreme Court, the Court held that there should be no right of contribution in this non-collision case. Unconvinced of the wisdom of a judicially created rule of contribution, the Court refused to meddle in an area where Congress had already established a delicate but incomplete scheme of compensation.

The courts have interpreted *Halcyon* narrowly. *Halcyon* does not stand for the rule that there is no contribution in non-collision cases. Instead, the courts have interpreted it to prohibit contribution only when the third-party defendant is immune from suit by the plaintiff, as Haenn was immune because of the Harbor Workers' Act.[3] The Supreme Court confirmed this interpretation in *Cooper Stevedoring Co. v. Kopke, Inc.,* 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). In *Cooper,* a stevedore was injured on a vessel when he stepped into a crack between some crates. The stevedore filed suit against the vessel and the company which had loaded the crates. Neither company was the stevedore's employer, and, therefore, the stevedore could sue either one. Given these facts, the Supreme Court held that the vessel did have a right of contribution from the stevedore company. *Cooper* and *Halcyon* together stand for the proposition that when a plaintiff has a right of action against two defendants, the defendants may implead each other for contribution. If one of the defendants is immunized from suit by the plaintiff, however, the remaining defendant may not seek contribution.

This conclusion is reinforced by the Ninth Circuit's opinion in *United Airlines, Inc. v. Wiener,* 335 F.2d 379, 402–04 (9th Cir.), *cert. dismissed,* 379 U.S. 951, 85 S.Ct. 452, 13 L.Ed.2d 549 (1964), an airplane crash case, in which the Ninth Circuit stated that in general there can be no liability for *contribution or indemnity* unless the proposed indemnitor is independently liable to the plaintiff.[4] The Ninth Circuit specifi-

1. *See* Part III, *infra.*

2. Ferreira has cited a number of other Longshoremen's cases which are not further discussed here. In the longshoremen's cases, the courts deny indemnity to a shipowner sued by an injured party because of the existence of the Harbor Worker's Act. *See, e.g. S.S. Seatrain Louisiana v. California Stevedore & Ballast Co.,* 424 F.Supp. 180 (N.D.Cal.1976). With the exception of *Halcyon,* these cases are not particularly helpful here. There is no law analogous to the Harbor Worker's Act covering Jones Act seamen. Thus, there is no statutory immunity from suit as there is in the longshoremen's cases. *Halcyon* is discussed here because it and subsequent cases have established the rule that there is no liability for contribution or indemnity absent liability of the proposed indemnitor to the injured party.

3. *See, e.g., Horton & Horton, Inc. v. T/S J.E. Dyer,* 428 F.2d 1131, 1133–34 (5th Cir.1970), *cert. denied,* 400 U.S. 993, 91 S.Ct. 461, 27 L.Ed.2d 441 (1971) (decision below allowing contribution affirmed).

4. *Tri-State Oil Tool Indus., Inc. v. Delta Marine Drilling Co.,* 410 F.2d 178 (5th Cir.1969), which preceded *Cooper* and which is cited by the plaintiffs, is not in conflict with *Wiener* or the Supreme Court cases. In *Tri-State,* the plaintiff was injured aboard a drilling rig. He sued his employer who owned the rig and also a contractor working on the rig whose active negligence had caused the plaintiff's injuries. The plaintiff obtained a judgment against both defendants, the court having found the contractor to be negligent and the rig owner to have provided an unseaworthy rig because of the dangerous con-

cally referred to maritime law in reaching this conclusion.[5]

B. *The Co-employee Cases.* Following the *Cooper-Halcyon* reasoning would lead us to inquire whether Rebelo could sue Ferreira directly for his damages. Clearly Ferreira is not *immunized* from liability by any particular statute or rule. Nevertheless, Rebelo could not sue Ferreira for his injuries.

■■■■ This is a maritime case. Maritime law causes of action are not identical to those provided by the common law. The differences between the maritime law and the common law are particularly pronounced in the employment area. Historically, seamen had only one cause of action against their employer: maintenance and cure. Maintenance and cure is an incident of the contractual relation between seamen and their employers. Unseaworthiness was an American innovation. The unseaworthiness doctrine provides that the vessel owner has a non-delegable duty to provide a seaworthy ship for his crew. Obviously, a seaman has no cause of action for maintenance and cure or unseaworthiness against his co-employees because he has no contract with them, and the cases have so held.[6]

Before the statutory causes of action, such as the Jones Act, were created, a seaman could not sue either his employer *or his co-employee* for negligence. *See The Osceola,* 189 U.S. 158, 175, 23 S.Ct. 483, 487, 47 L.Ed. 760 (1903); *Chelentis v. Luckenbach S.S. Co.,* 243 F. 536 (2d Cir. 1917), *aff'd,* 247 U.S. 372, 38 S.Ct. 501, 62 L.Ed. 1171 (1918). The Jones Act created a right of action for seamen against their employer, but only against their employer.

*See Allen v. United States,* 338 F.2d 160, 162 (9th Cir.1964), *cert. denied,* 380 U.S. 961, 85 S.Ct. 1104, 14 L.Ed.2d 152 (1965). While there are no Ninth Circuit opinions addressing the question of whether a seaman may sue a co-employee for negligence, other district and state courts have held that a seaman may not sue a co-employee for negligence resulting in personal injury. *Ivy v. Security Barge Lines, Inc.,* 89 F.R.D. 322 (N.D.Miss.1980); *West v. Marine Resources Comm'n,* 330 F.Supp. 966 (E.D.Va.1970); *Vincent v. Penrod Drilling Co.,* 372 So.2d 807 (La.App.1979).

■■■■ The co-employee cases, together with the *Cooper-Halcyon* doctrine, lead to the conclusion that CHB and Fisheries may not file claims for contribution or indemnity against Ferreira.[7] They may not sue him because Rebelo has no right of action against Ferreira, and their right of contribution depends on Rebelo's right of action. *See Cooper, supra.* There are, however, some cases in which employers analogous to Jones Act employers have been permitted to counter-claim or bring third-party claims against their employees. First, there are the property damage cases. When an employee is injured in an accident which causes damage to property, and the employee sues the employer, the employer may counter-claim for property damage against the plaintiff or implead another employee whose negligent acts allegedly caused the property damage. Second, there are the assault cases. If a seaman assaults a co-employee, and the co-employee sues the employer for damages, the employer may sue the assaulting employee for contribution or indemnity. These cases are discussed below.

---

dition which the contractor created. The Fifth Circuit, apparently making new law, allowed the passively negligent employer to seek indemnity from the actively negligent contractor. *Tri-State* is not contrary to *Wiener* or the Supreme Court cases because in *Tri-State the plaintiff had a cause of action against both the contractor and the rig owner.* Therefore, under *Cooper,* the defendants could cross-claim for indemnity. The difference between this case and *Tri-State* is that in this case Rebelo, the plaintiff, cannot sue the potential indemnitee, Ferreira.

5. *See United Airlines, supra,* 335 F.2d at 402–04.

6. *See West v. Marine Resources Comm'n,* 330 F.Supp. 966 (E.D.Va.1970); *Vincent v. Penrod Drilling Co.,* 372 So.2d 807 (La.App.), *cert. denied,* 375 So.2d 646 (La.1979).

7. Because plaintiffs never had a cause of action against the defendant, even before the Jones Act, plaintiffs' reliance on the purpose expressed in the Limitation of Shipowners' Liability Act, 46 U.S.C. § 187 (1982), is misplaced.

C. *Property Damage Cases.* Both the plaintiffs and defendant Ferreira rely on the property damage cases to support their arguments. They cite two kinds of property damage cases: railroad cases and maritime cases. The maritime cases provide no support for plaintiffs' position.[8] The railroad cases merit some discussion.

The railroad cases are pertinent to this motion because the Jones Act incorporates the provisions of the FELA, which governs suits by railroad employees against their employers. In each of the railroad cases, there was a train wreck which caused personal injury to one or more workers and also caused property damage to the railroad. The injured employees brought suit under the FELA, and the railroads counter-claimed against them for the property damage or brought third-party claims against co-employees for property damage. *See Sprague v. Boston & Maine Corp.*, 769 F.2d 26 (1st Cir.1985) (FELA does not bar counter-claim for property damage against railroad employee); *Cavanaugh v. Western Maryland Ry. Co.*, 729 F.2d 289 (4th Cir.), *cert. denied*, 469 U.S. 872, 105 S.Ct. 222, 83 L.Ed.2d 151 (1984) (same); *Stack v. Chicago, M. St. P. & Pac. R.R. Co.*, 94 Wash.2d 155, 615 P.2d 457 (1980) (counter-claim and third-party claims barred in suit by railroad employee); *Yoch v. Burlington Northern Railroad Co.*, 608 F.Supp. 597 (D.C.Colo.1985) (counter-claim barred).

The issue in each of these cases was whether the railroad could counter-claim or implead fellow employees for property damage. The cases focus on two provisions of the FELA, 45 U.S.C. §§ 55, 60

(1982), which are incorporated into the Jones Act. Those sections provide in part:

§ 55 Any contract, rule, regulation or device whatsoever, the purpose or intent of which shall be to enable any common carrier to except itself from any liability created by this chapter, shall be void.

. . . .

§ 60 Any contract, rule, regulation or device whatsoever, the purpose, intent or effect of which shall be to prevent employees of any common carrier from furnishing voluntarily information to a person in interest as to the facts incident to the injury or death of any employee, shall be void.

The plaintiffs claimed that these sections barred the counter-claims and third-party claims because those claims would have the effect of exempting the employer from liability and would inhibit fellow employees from coming forward with the facts relative to accidents for fear of being sued for property damage. Both the First and Fourth Circuit Courts of Appeals held that the FELA did not bar the claims. The Washington Supreme Court and at least one district court held that the FELA did bar the claims. *See Stack, supra; Yoch, supra.*

These cases could not provide support for plaintiffs' proposed cause of action against Ferreira because the FELA provisions at issue in the railroad cases do not purport *to create* any cause of action. The counter-claims and third-party claims in the railroad cases were common law actions, not maritime law actions. The courts assumed that they existed, and the only question was whether the FELA had abolished

---

**8.** *See Security Barge Line, Inc. v. McCray*, 582 F.2d 13 (5th Cir.1978); *Trexler v. Tug Raven*, 290 F.Supp. 429 (E.D.Va.1968). *Security Barge* is of little help to the plaintiffs. The plaintiff in that case was a shipowner who sued his employee's estate for negligently setting fire to a vessel. The employee's estate counter-claimed for wrongful death. The trial court found the shipowner liable on an unseaworthiness theory and found that the employee was not negligent. The Fifth Circuit affirmed. There is no evidence that the issue in this case was in any way considered by the *Security Barge* court. *Trexler v. Tug Raven* is also of little help. In *Trexler,* a fire broke out while a tug and a barge were

pumping fuel into the terminal of Crown Corporation. An employee of the rig was killed. *Crown* sued the master and the mate of the rig and barge. There is nothing in the opinion that indicates that the *tug or barge* sued the master or the mate. Furthermore, the district court entered judgment in the case for the deceased seaman against the tug and the barge, *but not against the master or the mate,* even though the court had found that the mate had caused the fire. There was no discussion of the master or the mate paying any indemnity or contribution for this judgment. In short, these cases do not lend support to plaintiffs' position.

them.[9] The existence of those claims in a common law case does not conclusively demonstrate the propriety of such claims in a maritime case.

Sections 55 and 60 may bar plaintiffs' suit, but the Court chooses not to rest its ruling on this ground. While the purposes of the FELA might be promoted by a rule barring counter-claims in personal injury suits, the language of the statute is not easily susceptible of a reading barring this claim. Furthermore, as pointed out by the court in *Cavanaugh*, the legislative history of the statute is not supportive of the position that sections 55 and 60 bar counter-claims or third-party claims. Since the railroad cases could only support and not undermine this Court's decision, there is no need to decide an issue which has divided able judges in other jurisdictions.

D. *The Assault Cases.* Much of CHB's and Fisheries' argument in favor of allowing an action for contribution and indemnity is founded on cases concerning assaults against a fellow seaman. *See States Steamship Co. v. Howard*, 180 F.Supp. 461 (D.Or.1960); *Thompson v. American Export Lines*, 15 F.R.D. 125, 1953 A.M.C. 2107 (S.D.N.Y. 1953); *Lambert v. Morania Oil Tanker Corp.*, 677 F.2d 245 (2d Cir. 1982). In *Howard* and *Thompson*, the courts held that employees guilty of assault may be liable for indemnity to their employers when the employers are held liable to the injured parties. In *Lambert*, the Second Circuit affirmed a directed verdict for an employer where there was no evidence that the employer had been negligent in hiring the assaulting employee.[10]

*Howard* and *Thompson* do contain broad language concerning the common law right to indemnity which employers have against their negligent employees. The cases are based on a tort theory of indemnity. That

theory holds that if there are two tortfeasors, and one is primarily or actively at fault and the other secondarily or passively at fault, then the passively negligent party may obtain indemnity from the actively negligent party. These cases are not controlling here for two reasons: First, the *Howard* and *Thompson* courts do not seem to have considered whether the injured seaman had a cause of action against their co-employees. They merely assumed that the common law scheme of liability applied to maritime torts. But if this were a common law case, Rebelo would have a common law negligence action against his employer, which he does not; and Rebelo would have a common law negligence action against Ferreira, which he does not. *See The Osceola, supra.* These differences are critical under *Cooper* and *United Airlines v. Wiener.*

Second, the rationale of the assault cases would not lead to a just result outside of the assault context. Obviously, one can make a strong case for indemnity in the case of intentional torts. If there were no rule allowing indemnity nor a cause of action against assaulting employees, malevolent employees could maim and injure at their pleasure, leaving the risk on the employer. There is no such risk of sadistic behavior with employees who are merely allegedly negligent.

In summary, analogous case law supports Ferreira's contention that there is no cause of action against him for indemnity or contribution. More importantly, the court feels that this construction of the case law is not only the proper application of the cases, but is also consistent with public policy in this area. Allowing this action would contravene the policies of the Jones Act. The Jones Act was not enacted to discipline negligent seamen, but to the

9. *See Sprague*, 769 F.2d at 27. The *Sprague* court framed the issue to be decided as "whether the FELA *rescinded* the common law rule that permits an employer to sue his employee for damage to the employer's property." (Emphasis added.)

10. The Second Circuit noted that in every assault Jones Act case the injured employee's recovery is premised on the negligence of both the

employee and the employer. Plaintiffs think that this fact makes the assault cases the equivalent of the case at bar. But they are not equivalent. In the assault cases, the assaulting employee's conduct is willful, even though the employee's recovery is based on negligence. In this case, there is no allegation that Ferreira *willfully* injured Rebelo.

contrary, was enacted for "the benefit and protection of seamen who are peculiarly the wards of admiralty." *The Arizona v. Anelich,* 298 U.S. 110, 123, 56 S.Ct. 707, 711, 80 L.Ed. 1075 (1936). "The Act was designed for this specific class of plaintiffs who are subject to rigorous discipline and an obligation to follow orders inherent in their profession." *United Continental Tuna Corp. v. United States,* 550 F.2d 569, 573 (9th Cir.1977). The Jones Act may be construed as having other purposes and effects.[11] Two desirable effects of employer liability rules such as the Jones Act are that they induce employers to take an efficient level of care in supervising their employees by putting the cost of losses on the employer, and they compensate employees for work-related injuries. Allowing indemnity claims by shipowner-employers would lessen the incentives that employers have to supervise their crews and adequately to man their ships so as to prevent negligent acts by over-burdened seamen, and it certainly could not be expected to facilitate compensation to injured seamen for work-related injuries.

Plaintiffs argue that seamen should be held liable for indemnity or contribution for their negligence when they cause injury to their fellow seamen. They purport to base their argument on concern for fairness and safety: that it would be unfair not to hold seamen liable when employers are held liable for the seamen's conduct, and that immunity for seamen would lead to negligent behavior. But the danger and unfairness of plaintiffs' argument would be apparent if this court followed it. Imagine that individual seamen went to sea—a dangerous undertaking—knowing that any false move might cost them hundreds of thousands of dollars, or that their filing suit when injured might bankrupt a fellow seaman. Such a situation would make seamen hesitant to go to sea at all, let alone to follow necessary orders which they felt might be hazardous to themselves or others, and it could lead to retaliation and recriminations between seamen over the filing of claims.

To precipitate potential liability upon seamen could decimate the seaman occupation, since the potential liabilities would be monumental in comparison to their earning ability. These disadvantages to seamen would not be counter-balanced by any boon to shipowner-employers since they would still be liable to the plaintiff in the first instance, and the prospect of satisfying indemnity or contribution judgments would be problematical. Congress apparently did not feel that the purposes expressed in the Jones Act warranted the creation of liability for individual seamen, and, therefore, did not make them liable to their co-employees or their employers. This court is unwilling to disturb that decision.

### III.

The court is aware that a prior decision of this court is in direct conflict with today's ruling. In *Mellon National Leasing Corp. v. Rosa,* No. 84–2761–B(CM) (S.D. Cal. Apr. 2, 1985) (Brewster, J.), [Available on WESTLAW DCT database] this court held that a shipowner and an employer could sue a Jones Act employee under circumstances similar to the circumstances of this case. Mellon National Leasing Corporation ("Mellon") was the owner of the M/V American Eagle. Agtek International, Inc., ("Agtek") Mellon's co-plaintiff, operated the American Eagle. The defendants, Frank Rosa and Jose Mauricio, were respectively the deck boss and the navigator of the American Eagle on January 20, 1981, when it collided with the M/V Adamantios. As a result of the collision, both vessels suffered severe damage, and a fellow crewmember, Captain Belchior Mauricio, was injured. The plaintiffs sued Rosa and Mauricio for indemnity against any amounts which the plaintiffs might be compelled to pay either to the owners of the Adamantios or to Captain Belchior Mauricio, the fellow crewmember. The plaintiffs identified four types of damage for which they claimed indemnity: (1) property damage and other losses incurred by the Adamantios; (2) property damage and expenses incurred by the American Eagle; (3)

---

11. *See generally* 3 F. Harper, F. James, & O. Gray, *The Law of Torts* § 11.5 (2d ed. 1986) (discussing objectives of tort law generally); 4 *id.* at § 25.1 (discussing compensation).

fishing profits which the American Eagle would have earned but for the accident; and (4) damages paid to Captain Belchior Mauricio for injuries he suffered during the collision. The defendants moved to dismiss the action on the grounds that it was barred by the statute of limitations and by laches, that sections 55 and 60 of the FELA barred the action, and that public policy as expressed in the Jones Act and the general maritime law strongly disfavored the plaintiffs' claims. This court denied that motion, and the case subsequently settled out of court.

The court is now of the opinion that the *Mellon* decision was correct only insofar as it applied to the claims for property damage and lost profits. But for all of the reasons discussed above, that decision was erroneous insofar as it allowed the plaintiffs to sue for indemnity for damages to be paid to the fellow crewman, Captain Mauricio. Defendants in the Mellon case did not present one of the two grounds which the court relies on today: that a seaman has no direct liability to his fellow seaman for his negligent conduct and, therefore, cannot be liable by way of indemnity. The court declines to follow that portion of its ruling in *Mellon*.

### IV.

For all of the reasons stated above, plaintiffs' action for indemnity or contribution against Danny Ferreira must be dismissed, and it is hereby dismissed with prejudice.

IT IS SO ORDERED.