United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 02, 2005**

Charles R. Fulbruge III
Clerk

REVISED DECEMBER 20, 2005

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-31267

JEFFREY WAYNE WITHHART,

Plaintiff-Counter Defendant-Appellee,

versus

OTTO CANDIES, L.L.C., ET AL.,

Defendants,

SEA MAR, INC., NABOR MARINE, L.L.C.,

Defendants-Counter Claimants-Appellants,

SEA MAR MANAGEMENT, L.L.C.,

Counter Claimant-Appellant

Appeal from the United States District Court for
the Western District of Louisiana

Before REAVLEY, GARZA, and BENAVIDES, Circuit Judges.

REAVLEY, Circuit Judge:

Sea Mar, Inc. appeals the district court's dismissal under Federal Rule of

1

Civil Procedure 12(b)(6) of its counterclaims against Jeffrey Wayne Withhart. The issue presented in this appeal is whether a shipowner-employer (Sea Mar) may assert a negligence and indemnity claim against its seaman-employee (Withhart) for property damage allegedly caused by Withhart's negligence. The district court answered this question in the negative, and dismissed Sea Mar's counterclaim. This is an issue of first impression in this Circuit and, surprisingly, an issue of first impression in the federal circuit courts. Because the Federal Employers' Liability Act ("FELA"), 46 U.S.C. §§ 51, *et seq.*, and consequently, the Jones Act, 46 U.S.C. § 688, contain no prohibition against a general maritime negligence and indemnity claim by a shipowner-employer against its seaman-employee for property damage, we reverse the district court's judgment and remand for further proceedings.

## I.

This matter arises out of an accident at sea. Withhart filed a complaint under the Jones Act and general maritime law against Defendant Otto Candies, L.L.C. ("Otto") and Stolt Offshore, Inc. alleging that on December 3, 2001, he was employed by Sea Mar as a mate aboard the M/V CAPE HATTERAS, a vessel owned and operated by Sea Mar, and sustained personal injuries as a result of a collision between the M/V CAPE HATTERAS and the M/V KELLY CANDIES, a vessel owned and operated by Otto. Thereafter, Otto filed a third-party complaint

2

against Sea Mar demanding defense, indemnification, contribution and/or recovery. Pursuant to the demand, Sea Mar paid Otto $26,310 for property damage to its vessel. Withhart then twice amended his complaint to add Sea Mar and others as defendants. Subsequently, Sea Mar filed a negligence counterclaim against Withhart for property damage sustained by the M/V CAPE HATTERAS, as well as an indemnity counterclaim for the damages paid to Otto for property damage to its vessel.

By counterclaim Sea Mar alleged that on December 3, 2001, Withhart, in his capacity as mate/second captain aboard the M/V CAPE HATTERAS, on watch and in command of the vessel, negligently left the wheelhouse of the vessel in congested waters to attend to personal business; and during Withhart's absence, the collision between the vessels occurred.

Withhart moved to dismiss the counterclaims under Federal Rule of Civil Procedure 12(b)(6). The district court dismissed the counterclaim and certified the judgment for immediate appeal, and we accepted the certification.

## II.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(b). This court reviews *de novo* the district court's grant of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss. *See Frank v. Delta Airlines, Inc.*, 314 F.3d 195, 197

3

(5th Cir. 2002). The district court's interpretation of a statute is also subject to *de novo* review. *Lara v. Cinemark USA, Inc.*, 207 F.3d 783, 786 (5th Cir. 2000). However, in this interlocutory appeal permitted under 28 U.S.C. § 1292(b), our review is limited. *See Malbrough v. Crown Equip. Corp.*, 392 F.3d 135, 136 (5th Cir. 2004). Our appellate jurisdiction under § 1292(b) extends only to interlocutory orders involving a "controlling question of law." 28 U.S.C. § 1292(b); *Malbrough*, 392 F.3d at 136. Accordingly, we review only whether the district court erred in concluding that Sea Mar cannot assert a negligence and indemnity counterclaim for property damage against Withhart.

### III.

The district court heard this case pursuant to 28 U.S.C. § 1333(1), which grants district courts original jurisdiction over admiralty and maritime suits. In determining the rights and duties of parties to a maritime action, this Court must look to the general rules of maritime law or specific enactments of Congress.

We turn first to whether general maritime law recognizes suits by vessel owners for property damage caused by negligent seamen, an issue the parties failed to address and the district court did not discuss. General maritime law negligent-property-damage actions by shipowner-employers against its seaman-employees are

4

few and far between.[1]

Nevertheless, negligence is an actionable wrong under general maritime law. In *Leathers v. Blessing*, 105 U.S. (15 Otto) 626, 26 L.Ed. 1192 (1882), the Supreme Court recognized the maritime tort of negligence which exists as a counterpart to state law negligence. *Id.* at 630 ("[T]he term 'tort,' when used in reference to admiralty jurisdiction, ... includes wrongs suffered in consequence of the negligence or malfeasance of others, where the remedy at common-law is by an action on the case."). From its inception, the maritime tort of negligence has matured into a multi-purpose maritime law cause of action that cuts over a large area of admiralty law including, among others, salvage, *see, e.g., The Sabine*, 101 U.S. (11 Otto) 384, 25 L.Ed. 982 (1879), towage, *see, e.g., Stevens v. The White City*, 285 U.S. 195, 52 S.

---

[1] Our own research uncovered a few cases permitting a shipowner-employer to sue a negligent seaman-employee for property damage. In *Moore-McCormack Lines v. McMahon*, 235 F.2d 142 (2d Cir. 1956), the Second Circuit specifically recognized a suit styled a "cross libel" under the old admiralty rules by a vessel owner in a limitation action against the negligent officers of the ship. The *McMahon* court specifically recognized a claim for indemnity, and not merely a property damage claim. *Id.* at 143-44. In *Carstens v. Great Lakes Towing Co.*, 71 F.Supp. 394, 395 (N.D. Ohio 1945), a district court permitted a counterclaim for property damage caused by a negligent seaman-employee when the initial action was brought under the Jones Act. *Cf. Security Barge Line Inc. v. McCray*, 582 F.2d 13 (5th Cir. 1978) (reviewing errors assigned in an action by a shipowner-employer for property damages to its vessel caused by a negligent seaman-employee, but not addressing the issues involved in the instant case).

5

Ct. 347, 76 L.Ed. 699 (1932), and loss of the use of a vessel, *see, e.g., Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376-77 (5th Cir. 2000).  The elements of a maritime negligence cause of action are essentially the same as land-based negligence under the common law.  *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630, 79 S. Ct. 406, 409, 3 L.Ed.2d 550 (1959); *Canal Barge Co., Inc.*, 220 F.3d at 376-77; 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW 182-93 (4th ed. 2004) (discussing the elements in depth).  Accordingly, we hold that Sea Mar's claims are consistent with general maritime law.[2]

## IV.

The next question is whether the Jones Act or FELA precludes Sea Mar from asserting its counterclaims for property damage against Withhart.

## A.

We begin with a review of the history of the Jones Act.[3]  It was enacted in

---

[2] A comparative fault regime would govern Sea Mar's counterclaims.  *See United States v. Reliable Transfer Co., Inc.,* 421 U.S. 397, 411, 95 S. Ct. 1708, 1715-16, 44 L.Ed.2d 251 (1975); *Lewis v. Timco, Inc.,* 716 F.2d 1425, 1428 (5th Cir. 1983) (en banc) ("comparative fault has long been the accepted risk-allocating principle under the maritime law").

[3] The Jones Act provides as follows:

> Any seaman who shall suffer personal injury in the course of

1920 to create a negligence cause of action for ship personnel against their employers. *See California Home Brands, Inc. v. Ferreira*, 871 F.2d 830, 832-33 (9th Cir. 1989) (discussing the case law pre-Jones Act). In passing the Jones Act, Congress did not specifically enumerate the rights of seamen, but extended to them the same rights granted to railway employees by FELA. *Cox v. Roth*, 348 U.S. 207, 208, 75 S. Ct. 242, 243, 99 L.Ed. 260 (1955). Intrinsically, interpretations of FELA are instructive in deciding whether causes of action exist under the Jones Act. *See Brown v. Parking Drilling Offshore, Corp.,* 410 F.3d 166, 178 (5th Cir. 2005) ("Jones Act cases follow cases under the FELA.") (citation omitted).

Withhart contends that the Jones Act extends to seamen-employees the same rights granted to railway employees by FELA, and by enacting FELA, Congress impliedly rescinded an employer's common law right to sue its employees for property damage, and hence, the Jones Act does the same.

The majority of courts, including every federal circuit court to address this

_____

his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common law right or remedy in cases of personal injury to railway employees shall apply....

46 U.S.C. § 688.

7

issue, have concluded that FELA did not abrogate an employer's common law right to sue its employees for property damage. *See, e.g., Cavanaugh v. Western Maryland Ry. Co.,* 729 F.2d 289, 294 (4th Cir. 1984); *Sprague v. Boston & Marine Corp.*, 769 F.2d 26, 29 (1st Cir. 1985); *Nordgren v. Burlington Northern R.R. Co.,* 101 F.3d 1246, 1251 (8th Cir. 1996). We agree with these courts and find their rationale to be persuasive.

There is contrary authority. *See Stack v. Chicago, Milwaukee, St. Paul & Pac. R.*, 94 Wash. 2d 155, 615 P.2d 457 (1980) and *Yoch v. Burlington N.R.R.*, 608 F.Supp. 597 (D. Colo. 1985). Contrary to *Cavanaugh, Sprague,* and *Nordgren,* both of these cases held that the FELA's prohibition of "any device whatsoever" in Sections 5 and 10 of the FELA, 45 U.S.C. §§ 55 & 60, bars a railroad's counterclaim for property damage against a railroad employee. *See Stack*, 615 P.2d at 459-61; *Yoch*, 608 F.Supp. at 598. Thus, the courts have reached different results based on the statutory language of the FELA. We believe that *Cavanaugh, Sprague,* and *Nordgren* provide a better reasoned analysis in finding that the FELA does not bar a railroad's counterclaim for property damage against a railroad employee.

In *Cavanaugh*, a railroad engineer covered by the FELA brought an action against his employer for personal injuries sustained in a head-on train collision. 729

8

F.2d at 290. The railroad then commenced an action against the engineer for causing the property damage sustained as a result of the engineer's negligence in operating its equipment. *Id.* The court first noted that "there is a well accepted common law principle that a master or employer has a right of action against his employee for property damage ... 'arising out of ordinary acts of negligence committed within the scope of [the employee's] employment'...." *Id.* (citation omitted). The court then reviewed the statutory language and legislative history of the FELA.

The plaintiff in *Cavanaugh* argued that a counterclaim was a "device," under Section 5 of the FELA,[4] used by the railroad to exempt itself from liability to the plaintiff employee. *Id.* at 291-92. The court disagreed with the employee's argument and found that the critical word in the definition of "device" was "exemption":

> It is only when the 'contract ... or device' qualifies as an 'exempt[ion] itself from any liability' that it is 'void[ed]' under Section 5. But a

---

[4] Section 5 of the FELA provides:

Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from liability created by this Chapter, shall to that extent be void...

45 U.S.C. § 55.

counterclaim by the railroad for its own damages is plainly not an 'exempt [ion] ... from any liability' and is thus not a 'device' within the contemplation of Congress.

*Id.* at 292.

The court looked at the legislative history of Section 5 to determine the definition of the term "device," and found that the legislative history revealed that Congress was trying to eliminate employment contracts that release the company from liability for damages arising out of the negligence of other employees or the common carrier. *Id.* at 292-93. Therefore, the court held that a counterclaim by the railroad was not a "'contract ... or device' the purpose of which [was] to provide an exemption which Congress was intending to 'void' in Section 5." *Id.* at 293.

The plaintiff in *Cavanaugh* also argued that Section 10 of the FELA[5] implies a statutory bar against the railroads' counterclaim. *Id.* The court noted that the plain language of this section indicates that it was intended to prevent the railroad from making inaccessible to an injured employee other railroad employees whose

---

[5] Section 10 of the FELA provides:

Any contract, rule, regulation, or device whatsoever, the purpose, intent or effect of which shall be to prevent employees of any common carrier from furnishing voluntary information to a person in interest as to the facts incident to the injury or death of any employee, shall be void....

45 U.S.C. § 60.

10

testimony might be helpful to the injured employee should he choose to sue the railroad. *Id.* The plaintiff argued that a counterclaim against an employee by a railroad would make other parties with information less reluctant to voluntarily furnish information. *Id.* The court stated that "there is no authority for an assumption that the possibility of a counterclaim being filed creates an unfair advantage in favor of the defendant or improperly coerces or intimidates the injured party from seeking redress for his injuries." *Id.* at 294. The court held that "[w]e cannot believe that Congress has any such far-fetched purpose in enacting section 10." *Id.* at 293.

In sum, the *Cavanaugh* court determined that the FELA contained no prohibition against the railroad's suit against the engineer, and that the state common law allowed an employer, such as the railroad, to sue its employee for damages sustained as a result of the employee's negligence. *Id.* at 294. The First Circuit's analysis in *Sprague* and the Eighth Circuit's analysis in *Nordgren* follows the same logic outlined by the Fourth Circuit in *Cavanaugh* and, in each case, allowed the railroad's counterclaim to stand. *Sprague,* 769 F.2d at 28-29; *Nordgren*, 101 F.3d at 1250-53.

We hold that no statutory provision in the FELA, and consequently, in the Jones Act, prohibits a shipowner-employer from pursuing a claim against its

11

negligent seaman-employee for property damage.

B.

Withhart relies heavily upon the Ninth Circuit's decision in *California Home Brands, Inc. v. Ferreira*, 871 F.2d 830 (9th Cir. 1989) and the companion case of *C.H.B. Foods, Inc. v. Rebelo*, 662 F. Supp. 1359 (S.D. Cal. 1987) in arguing that the Jones Act prohibits Sea Mar's negligence and indemnity counterclaim for property damage. The issue in *Ferreira* was whether a shipowner-employer, who may be liable to an injured seaman-employee under the Jones Act, is entitled to seek indemnity and contribution from another of its employees whose negligence allegedly caused the injury. 871 F.2d at 832. The court held that a shipowner may not assert an indemnity and contribution claim against a seaman. *Id.* at 833. Its primary rationale in reaching this conclusion was that, because an injured seaman does not have a cause of action against a fellow negligent employee, it would be illogical to allow a shipowner, standing in the injured seaman's shoes, to recover from the negligent employee. *Id.* The holding can be distinguished for that reason. *See Gabourel v. Bouchard Transp.*, 901 F.Supp. 142, 145 (S.D.N.Y. 1995) (distinguishing *Ferreira* and *Rebelo*).[6]

---

[6] In fact, a careful reading of the *Rebelo* decision confirms the existence of an employer's right to recover property damage from a negligent employee. *Rebelo*,

12

C.

Withhart argues that allowing Sea Mar to assert its negligence and indemnity counterclaims for property damage would contravene the "Jones Act purpose of facilitating compensation to injured seaman." *Ferreira*, 871 F.2d at 837. We are cognizant that the purpose of the Jones Act was to benefit and protect seamen by enlarging, not narrowing, the remedies available to them. *See The Arizona v. Anelich*, 298 U.S. 110, 123, 56 S. Ct. 707, 711, 80 L.Ed. 1075 (1936). However, permitting a shipowner-employer to sue its seaman-employee for property damage arising out the seaman-employee's negligence will not narrow the remedies available to seamen-employees under the Jones Act. Further, in determining whether a seaman exercises due care, a court can consider the difficult conditions under which a seaman works. *Ferreira*, 871 F.2d at 837 (discussing the perils of seamen). But the fact that seamen work under difficult conditions is not a reason to shield them from liability from negligence and indemnity suits for property damage.

V.

We REVERSE the district court's judgment of dismissal and REMAND for

---

662 F.Supp. at 1366 ("When an employee is injured in an accident which causes damage to property, and the employee sues the employer, the employer may counterclaim for property damage against the plaintiff ... whose negligent acts allegedly caused the property damage.") (citing *Sprague* and *Cavanaugh*).

13

further proceedings.