# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 14, 2013

Lyle W. Cayce
Clerk

No. 12-30041

WALLACE BOUDREAUX,

Plaintiff - Appellant

v.

TRANSOCEAN DEEPWATER, INC.

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana

Before HIGGINBOTHAM, CLEMENT, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Wallace Boudreaux sued Transocean Deepwater, Inc. to recover maintenance and cure for a back injury allegedly sustained on the job. Transocean successfully established a defense to liability under *McCorpen v. Central Gulf Steamship Corp.* and counterclaimed to recover benefits it had already paid to Boudreaux. The district court awarded summary judgment to Transocean on its counterclaim, concluding that Transocean's successful *McCorpen* defense automatically established its right to restitution — a right of action never before recognized in maritime law. We reverse and render.

No. 12-30041

**I.**

Boudreaux began working for Transocean in January 2005.  He failed to disclose serious back problems in Transocean's pre-employment medical questionnaire, affirmatively answering "no" to several inquiries regarding any history of back trouble.  Less than five months after his hire, Boudreaux claimed that he had injured his back while servicing equipment.  As a consequence, Transocean paid the seaman maintenance and cure for nearly five years.

In April 2008, Boudreaux filed suit against Transocean alleging a right to further maintenance and cure and seeking punitive damages for Transocean's alleged mishandling of past benefits.  During discovery, Transocean obtained evidence of Boudreaux's pre-employment history of back problems.  Transocean filed an unopposed motion for partial summary judgment on Boudreaux's claim for further benefits, invoking *McCorpen* as a defense to maintenance and cure liability.  Under *McCorpen*, a maritime employer does not owe maintenance and cure if it can establish that a seaman intentionally misrepresented or concealed a pre-existing medical condition that is material to the employment and is causally connected to the injury allegedly sustained.[1]

The district court granted Transocean's unopposed motion.  Thereafter, Transocean filed a counterclaim to recover the maintenance and cure payments it had already made to Boudreaux.  Transocean moved for summary judgment on the counterclaim, contending that its successful *McCorpen* defense automatically established its right to restitution under general maritime law. Prior to the district court's ruling on the motion, Transocean and Boudreaux reached a bracketed settlement that resolved all issues pending before the court, with the exception of Transocean's counterclaim.   Under the settlement,

---

[1] *McCorpen v. Central Gulf S. S. Corp.*, 396 F.2d 547, 549 (5th Cir. 1968); *see also Johnson v. Cenac Towing Inc.*, 544 F.3d 296, 301 (5th Cir. 2008).

2

No. 12-30041

Boudreaux is entitled to a lesser sum of money if Transocean succeeds on its counterclaim.

Though Transocean acknowledged that its restitution-via-*McCorpen* theory was novel, it urged the district court to fashion a new maritime right of action based on state law principles of fraud and unjust enrichment. In a thoughtful opinion, the district court agreed and awarded summary judgment to Transocean on its counterclaim, albeit without accepting Transocean's state-law theories. Boudreaux appeals.

## II.

Transocean asks this Court to recognize a novel maritime cause of action, urging that an employer who establishes a *McCorpen* defense to maintenance and cure liability should thereby automatically gain an affirmative right to restitution for benefits previously paid. We decline the invitation.

A maritime employer's obligation to pay an injured seaman maintenance and cure is an essential part of the employment relationship, whether characterized as contractual or otherwise.[2] In *Still v. Norfolk & Western Railway Co.*, Justice Black's opinion for the Court clarified that a worker's fraud in procuring his employment does not vitiate the employment relationship, allowing him to maintain a suit for damages under the Federal Employers' Liability Act.[3] Courts including ours have since recognized that *Still*'s logic and

---

[2] *E.g.*, *Cortes v. Baltimore Insular Lines*, 287 U.S. 367, 371 (1932) (Cardozo, J.) ("The duty to make [maintenance and cure payments] is imposed by the law itself as one annexed to the employment."); *McCorpen*, 396 F.2d at 548 ("The shipowner's obligation [to pay maintenance and cure] is deep-rooted in maritime law and is an incident or implied term of a contract for maritime employment."); *Terrebonne v. K-Sea Transp. Corp.*, 477 F.3d 271, 279 (5th Cir. 2007) ("[M]aintenance and cure is an intrinsic part of the employment relationship, separate from the actual employment contract. . . . [it] cannot be contracted away.").

[3] *See* 368 U.S. 35, 45 (1961) ("[T]he status of employees who become such through other kinds of fraud . . . must be recognized for purposes of suits under the Act. And this conclusion

No. 12-30041

congressionally rooted paternal policy applies with equal force to seamen.[4] The *McCorpen* defense rests, if somewhat uneasily, alongside *Still* and progeny, permitting an employer to extricate itself from its maintenance obligation by demonstrating that the seaman "intentionally concealed" a material medical condition in obtaining his employment.[5] Though most courts have accepted *McCorpen*, Transocean's novel attempt to invoke the case as an affirmative right of recovery finds virtually no support,[6] and we are not inclined to accede.

The district court's concern with the egregious facts here is understandable, but the sweeping counterclaim it endorses would mark a

---

is not affected by the fact that an employee's misrepresentation may have, as is urged here, contributed to the injury or even to the accident upon which his action is based.").

[4] *See, e.g.*, *Johnson*, 544 F.3d at 301–02 ("The Supreme Court's decision in *Still* makes clear that a seaman . . . is not barred from suit under the Jones Act because he conceals a material fact in applying for employment." (citations omitted) (internal quotation marks omitted)); *Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 178 (5th Cir. 2005) ("The Supreme Court has effectively foreclosed any argument that misrepresentations in an application for employment might void the necessary employment relation.") (quoting *Reed v. Iowa Marine & Repair Corp.*, 143 F.R.D. 648, 651 (E.D. La. 1992)); *Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 989–90 (9th Cir. 1987) ("Maintenance and cure . . . derives from a seaman's employment on a vessel . . . The remedial nature of the Jones act and maritime law requires a less technical, contractual definition of 'employee' than Sealand asks us to use.") (citing *Still*, 368 U.S. at 45).

[5] *McCorpen*, 396 F.2d at 549; *see, e.g.*, *Johnson*, 544 F.3d at 301–02 ("Cenac continues to urge that the *McCorpen* defense should extend to 'any damages sought by a seaman for only the aggravation of his prior and intentionally concealed medical condition.' This legal argument, which we review *de novo* on appeal, is foreclosed by [*Still*].").

[6] In *Vitcovich v. Ocean Rover O.N.*, the Ninth Circuit implicitly sanctioned a restitution-via-*McCorpen* counterclaim; however, this decision was unpublished and devoid of analysis. *See* No. 94-35047, 1997 WL 21205 (9th Cir. Jan. 14, 1997). Courts that have meaningfully engaged with the maritime implications of a restitution-via-*McCorpen* right of action have rejected *Vitcovich*. *See, e.g.*, *Am. River Transp. Co. v. Benson*, 2012 WL 5936535 at *5 (N.D. Ill. 2012); *Hardison v. Abdon Callais Offshore, LLC*, 2012 WL 2878636 at *7 (E.D. La. 2012); *Dolmo v. Galliano Tugs, Inc.*, 2011 WL 6817824 at *2 (E.D. La. Dec. 28, 2011), *aff'd without opinion* 479 F. App'x 656 (5th Cir. 2012); *see also Kirk v. Allegheny Towing Inc.*, 620 F.Supp 458, 461 (W.D. Pa. 1985).

4

significant retreat from our hoary charge to safeguard the well-being of seamen.[7] Already, even without fraud, an employer may offset any Jones Act damages recovered by the seaman to the extent they duplicate maintenance and cure previously paid.[8] This, if the employer "show[s] that the damages assessed against it have in fact and in actuality been previously covered."[9] Yet we are urged to strike a new balance and allow an employer who establishes a *McCorpen* defense to automatically recover prior maintenance, without requiring the employer to prove duplication and regardless of the outcome of the primary suit.[10] In cases where no damages are recovered, or the award is insufficient to offset the seaman's restitution liability, the employer would gain an affirmative judgment against the seaman. Although most likely uncollectible, the judgment would stand as a serious impediment to the seaman's economic recovery, and its threat would have a powerful *in terrorem* effect in settlement negotiations.

Our concern with the district court's approach is heightened by the fact that *McCorpen* does not, as suggested, require the employer to establish that the seaman acted with a level of culpability akin to that required for common law fraud. Whereas fraud hinges on the subjective state of mind of the alleged wrongdoer,[11] thus generally falling "within the realm of the trier of fact because

---

[7] *See Karim v. Finch Shipping Co. Ltd.*, 374 F.3d 302, 310 (5th Cir. 2004) ("[T]he protection of seamen was one of the principal reasons for the development of admiralty as a distinct branch of law." (citation omitted)).

[8] *See Wood v. Diamond M Drilling Co.*, 691 F.2d 1165, 1171 (5th Cir. 1982).

[9] *Wood*, 691 F.2d at 1171 (internal quotation marks omitted) (holding that employer failed to carry its burden to demonstrate that its past payment of maintenance and cure entitled it to an offset against Jones Act damages award for lost wages).

[10] An employer's successful *McCorpen* defense does not prevent the seaman from suing for Jones Act negligence. *Brown*, 410 F.3d at 178.

[11] *Southland Secs. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 366 (5th Cir. 2004) ("[T]he requisite rule 10(b) scienter . . . is consistent with the general common law rule

it so depends on the credibility of witnesses,"[12] this Court held in *Brown v. Parker Drilling Offshore Corp.* that *McCorpen* "does not require a finding of subjective intent [to conceal]" and is satisfied as a matter of law if the seaman "fails to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information."[13] Applying this "objective" *McCorpen* test, the *Brown* panel overturned a jury verdict that the seaman had not intentionally concealed his medical history.[14]　In light of *Brown*, a restitution-via-*McCorpen* counterclaim would, in practice, threaten injured seamen with the specter of crushing liability for misstatements found material.[15] With respect, such a result is inimical to the existing fabric of maritime law.

Transocean asks us to weigh again conflicting values — of protecting seamen from the dangers of the sea, and employers from dishonesty.　While in this calculus, there is a stronger case for the employer if, under ordinary rules

---

that where, as in fraud, an essentially subjective state of mind is an element of a cause of action also involving some sort of conduct, such as a misrepresentation, the required state of mind must actually exist in the individual making . . . the misrepresentation . . . .").

[12] *D & J Tire, Inc. v. Hercules Tire & Rubber Co.*, 598 F.3d 200, 205 (5th Cir. 2010) (quoting *Rimade Ltd. v. Hubbard Enters., Inc.*, 388 F.3d 138, 144 (5th Cir. 2004) (quoting *Beijing Metals & Minerals v. Am. Bus. Ctr.*, 993 F.2d 1178, 1185 (5th Cir. 1993)).

[13] *Brown v. Parker Drilling Offshore, Corp.*, 410 F.3d 166, 174 (5th Cir. 2005) (quoting *Vitcovich*, 1997 WL 21205 at *3).

[14] *See id.*; *see also id.* at 181 (Stewart, J. dissenting) ("The initial majority opinion . . . completely substituted its credibility determinations for those of the jury in this case in an effort to rescue the shipowner from what the majority considered to be a legally deficient jury verdict. On rehearing, the majority strains to characterize this case as one which principally turns on the resolution of an objective issue of law and not on credibility, a traditional jury province, as the trial judge saw it and as I saw it after reading the trial record.").

[15] True enough, evidence that a seaman "failed to disclose medical information in an interview or questionnaire that is obviously designed to elicit such information" provides objective evidence of a subjective intent to deceive, evidence that, even under a traditional definition of *scienter*, would generally suffice to create a fact issue for trial.　However, such evidence is not sufficient to sustain a finding of fraud as a matter of law.

No. 12-30041

of *scienter*, a trier of fact determines that the seaman acted with subjective intent to defraud, we need not assess whether the district court made such findings in this case. We adhere to the balance that Justice Black struck fifty-one years ago in *Still*, a balance that has obtained to date. A seaman's fraudulent misrepresentation of his health history does not terminate the employment relationship, nor does it relieve the employer of its duties to the seaman should he suffer injury in its employ. As the seaman retains his damages remedy, his right to retain maintenance and cure already paid ought be an *a fortiori* case — after all, the obligation is unqualified and definite, and the employer's right to an offset against damages only weds the two.[16] Both flow from injury suffered by the seaman during the course of his employment,[17] and neither are lost by the seaman's fraud in securing his employ.

We are offered no reason to depart from precedent. There is only the change of advocates and judges, by definition irrelevant to the settling force of past jurisprudence — always prized but a treasure in matters maritime. All this against the cold reality that the sea has become no less dangerous, and the seaman no less essential to maritime commerce.

### III.

We REVERSE the district court's order awarding summary judgment to Transocean on its counterclaim and RENDER judgement for Boudreaux.

---

[16] *See Brister v. A.W.I., Inc.*, 946 F.2d 350, 360–61 (5th Cir. 1991).

[17] *Fitzgerald v. U.S. Lines Co.*, 374 U.S. 16, 18 (1963) ("[R]emedies for negligence, unseaworthiness, and maintenance and cure . . . serve the same purpose of indemnifying a seaman for damages caused by injury, depend in large part upon the same evidence, and involve some identical elements of recovery.").

No. 12-30041

EDITH BROWN CLEMENT, Circuit Judge, dissenting.

This court is called upon to determine whether restitution is available upon a successful establishment of a *McCorpen* defense. Because I believe the requirements of restitution are satisfied in all cases in which a *McCorpen* defense is successfully established, I would answer that question in the affirmative.

Every employer who successfully establishes a *McCorpen* defense must demonstrate that a seaman made an intentional and willful misrepresentation and relied on that misrepresentation to seek benefits to which he was not entitled. *Johnson*, 544 F.3d at 301; *Brown*, 410 F.3d at 171, 174. In my view, this is sufficient to entitle an employer to restitution under the fundamental equitable principle that a person who has received something to which he is not entitled through willful concealment or misrepresentation must restore it to the person from whom he received it. *See* LA. CIV. CODE ART. 2299; RESTATEMENT (THIRD) OF RESTITUTION & UNJUST ENRICHMENT § 1 ("A person who is unjustly enriched at the expense of another is subject to liability in restitution."). The district court eloquently stated, and I agree, that:

> It is a rare rule of law, maritime in nature or otherwise, that denies relief to an aggrieved party in the face of willful misconduct. Even wards of the court must be forthright and truthful. The entitlements seamen enjoy are created with the contract of employment. . . . [Boudreaux] has deprived himself of protection through his own wilful and deliberate misconduct and consequences should be considered. An opposite result would lead to a travesty of justice, encouraging mockery of the judicial process and denigration of the founding principles of admiralty based schemes that seek to promote the "combined objective of encouraging marine commerce and assuring the well-being of seamen."

*Boudreaux v. Transocean Deepwater, Inc.*, No. 08-1686, 2011 WL 5025268, at \*6 (E.D. La. Oct. 20, 2011) (quoting *Aguilar v. Standard Oil Co.*, 318 U.S. 724, 727-

No. 12-30041

28 (1943)). Boudreaux presents no reason to depart from this general principle or the district court's well-reasoned opinion adopting it, and I can find none.

The only circuit court to consider this issue has adopted the position that restitution is available upon a successful establishment of a *McCorpen* defense. *See Vitcovich v. Ocean Rover O.N.*, No. 94-35047, 106 F.3d 411, at *4 (9th Cir. Jan. 14, 1997) (unpublished). And although some district courts in this circuit have declined to award restitution under *McCorpen* in the absence of guidance from this court, that position does not find widespread support across all circuits. *See, e.g., Souviney v. John E. Graham & Sons*, No. 93-0479, 1994 WL 416643, at *5 (S.D. Ala. 1994) (unpublished) ("Because plaintiff intentionally concealed material facts about the very back injury for which he now seeks recovery against the defendant . . . as a matter of law, plaintiff is not entitled to receive maintenance and cure benefits. To the extent that such benefits have been paid by the defendant, the defendant is entitled to recover the amount of those benefits by way of judgment against the plaintiff."); *Quiming v. Int'l Pac. Enters., Ltd.*, 773 F. Supp. 230, 235-37 (D. Haw. 1990) (granting a counterclaim for $30,000 of maintenance and cure after defendants established that the plaintiff was never legally entitled to receive the benefits); *see also Bergeria v. Marine Carriers, Inc.*, 341 F. Supp. 1153, 1154-56 (E.D. Pa. 1972) ("In addition to our finding that [a] counterclaim [for improperly paid maintenance and cure] is cognizable within the maritime jurisdiction, it must also be allowed as a contractual set-off.").

The majority expresses concern that adopting this position will visit the hardship of restitution on a seaman absent a finding that the seaman subjectively intended to deceive. But that concern is based on an incorrect reading of our case law. It is undisputed that *McCorpen* requires a finding of *intentional* or *willful* concealment. *Johnson*, 544 F.3d at 301 ("[T]he *McCorpen*

9

defense applies [only] when an injured seaman has 'willfully concealed from his employer a preexisting medical condition.'" (quoting *Brown*, 410 F.3d at 171)). Although we have held that such intentionality can be demonstrated as a matter of law, this does not lessen the burden on the defendant to show that the seaman "intentionally misrepresented or concealed" medical information when he was called upon to reveal it. *Brown*, 410 F.3d at 171; *see id.* at 174-75.[1]

The majority also indicates that we should shy away from creating an automatic cause of action under *McCorpen* because "an employer may offset any Jones Act damages recovered by the seaman to the extent they duplicate maintenance and cure previously paid." I disagree that this consideration is relevant to our analysis. The question of how much Transocean will recover is not before us in this appeal. And as recovery under *McCorpen* is essentially an equitable remedy, courts retain the power to apportion an award so as not to doubly-tax a seaman. It follows that so long as an employer satisfies its burden of showing "duplication" by successfully asserting a *McCorpen* defense, it should be entitled to restitution in whatever form is sufficient to render it whole under all the circumstances.

Eight years ago this court adopted a similar position under the rubric of Jones Act claims. In *Withhart v. Otto Candies, L.L.C.*, the court began by acknowledging that "the purpose of the Jones Act," like maintenance and cure, "was to benefit and protect seamen by enlarging, not narrowing, the remedies

---

[1] Our precedent on this issue is consistent with our sister circuits' treatment of *McCorpen* and *McCorpen*-like defenses. *See, e.g., Evans v. Blidberg Rothchild Co.*, 382 F.2d 637, 639-40 (4th Cir. 1967); *Burkert v. Weyerhaeuser S. S. Co.*, 350 F.2d 826, 830-31 (9th Cir. 1965). This holding also follows directly from *McCorpen*, in which this court concluded that a seaman acted intentionally when he was "intelligent enough to know" that he had "a serious medical problem that should be revealed" and failed to reveal that condition "[i]n completing a form that was obviously designed to elicit information about past illnesses of importance." *McCorpen*, 396 F.2d at 549-50.

available to them." 431 F.3d 840, 845 (5th Cir. 2005). Nevertheless, this court held that shipowner-employers could assert negligence and indemnity claims against seamen for property damage caused by a seaman's negligence. *Id*. In the court's opinion, this cause of action would not narrow the remedies traditionally available to seaman under the Jones Act, and "the fact that seamen work under difficult conditions [was] not a reason to shield them from liability from negligence." *Id*.

The same is true here. Just because honest seamen are entitled to avoid the hassles of complex workers' compensation schemes does not mean that seamen who intentionally or willfully conceal prior medical conditions are entitled to the same benefits. This court recognized as much in *McCorpen,* and has consistently applied that principle for over fifty years. This case is therefore distinguishable from *Still*, in which the Supreme Court held that an employee could recover under the Federal Employers' Liability Act even if the individual obtained his job by false representations. 368 U.S. at 44-45. Here, there is no question as to whether Boudreaux is entitled to the benefits of maintenance and cure as a result of his misrepresentations. He is not and was not, and I would therefore hold that Transocean is entitled to restitution. There is no reason to reject this general equitable principle in the face of willful and intentional misconduct engaged in on land by a non-maritime employee, simply because, by virtue of that very misconduct, the individual later obtained maritime employment and became unjustly enriched at the expense of his maritime employer.

I respectfully dissent.